### CANDLER *v.* HEIGHO.

1. APPEAL AND ERROR—EVIDENCE—DIRECTED VERDICT.
    In reviewing a directed verdict in favor of defendant, the Supreme Court will view the testimony in the light most strongly tending to support the claim of plaintiffs.

2. FRAUD—REPRESENTATIONS—ELEMENTS OF ACTION.
    In order to make misrepresentation actionable, there must be a reliance upon the representation.

3. SAME—RELIANCE UPON REPRESENTATIONS—DIRECTED VERDICT.
    Although defendants, officers and stockholders of a corporation, misrepresented to the administrator of an estate the value of certain shares of the stock of the corporation inherited by plaintiffs, and bought it for much less than its book value, such misrepresentation was not actionable where the proofs conclusively show that the administrator fully investigated and placed before plaintiffs the facts as to its book value before the sale, and no reliance was placed upon such misrepresentation.

On degree of certainty necessary to establish fraud in a civil action, see note in 33 L. R. A. (N. S.) 836.

Error to Wayne; McDonald (John S.), J., presiding. Submitted October 9, 1919. (Docket No. 23.) Decided December 22, 1919.

Case by Mary V. Candler and another against George W. Heigho and others for fraud and deceit in the sale of corporate stock. Judgment for defendants on a directed verdict. Plaintiffs bring error. Affirmed.

*J. O. Murfin,* for appellants.

*Stellwagen & MacKay* (*Alex. J. Groesbeck,* of counsel), for appellees.

SHARPE, J. The plaintiffs are the wife and daughter of Claudius H. Candler, who died in the city of Detroit on February 24, 1910. Prior to his death, Mr. Candler had been the president and superintendent of the Calvert Lithographing Company. At the time of his decease, he owned 1,700 shares of its capital stock or 17/40ths of a total capitalization of $200,000, consisting of 4,000 shares of a par value of $50. At that time there were but 12 stockholders in the corporation. The stock was not listed for sale on the general market, nor had it been for years. The officers of the corporation at the time of Mr. Candler's death were himself as president, the defendant Ross as vice-president, and the defendant Heigho as secretary and treasurer, and these three constituted the board of directors. On March 16, 1901, the corporation had adopted a by-law which provided that—

"Any stockholder of this corporation who shall be desirous of selling any of his shares, the executor or administrator of any member deceased, and the grantee or assignee of any shares sold on execution or mortgage sale, shall cause such share or shares respectively to be appraised by the board of directors which it shall be their duty to do on request. If the owner,

executor, administrator or assignee aforesaid shall feel aggrieved at the appraisal of the board he may so notify the board in writing and designate therein one appraiser, and the board shall thereupon designate another, and they together shall select a third, and the appraisal of such three appraisers (hereinafter called award) after hearing the parties and an examination of the books of the company, if they so desire, shall be final and binding." * * *

It further provides that after such value is fixed by an appraisal or award the directors may buy the shares for the other stockholders, and that they should then be assigned, but that, if not so purchased within 60 days, they may be sold to any person in the usual way. At the time of its adoption, the stock in the corporation was held as follows: Calvert owned 2,482 shares, Candler 1,222, Ross 246, and Heigho 50.

Soon after Mr. Candler's death, Alexander K. Gage, the husband of the plaintiff Gertrude Candler Gage, was appointed administrator of the estate. He was an attorney, and at that time was in the active practice of his profession in the city of Detroit. Mr. Gage was familiar with the provisions of the by-law above referred to, and after Mr. Candler's death talked about it with the defendant Heigho. On May 31, 1910, Gage, as administrator, wrote the corporation, requesting that the stock held by Mr. Candler at the time of his decease be appraised by the board of directors pursuant to the by-law. On June 3, 1910, the corporation by letter advised him that such appraisal had been had and the value of the stock fixed at par, $50 per share. On June 9th, Mr. Gage acknowledged receipt of the letter and said he would give the matter prompt attention. On June 24th, Heigho as president reminded him of such promise, and on July 11th Gage wrote that he was not prepared to accept the value of the stock as appraised, and requested that the stock be transferred to him as administrator. On July 13th,

the corporation again wrote him, requesting that if dissatisfied with the appraisal he comply with the by-law and appoint an arbitrator, and declined to transfer the stock to him. On August 13th, Gage notified Heigho by telephone that he would accept the price fixed by the appraisers, and the stock was soon thereafter transferred and paid for at that price. Five hundred dollars was added as estimated dividends up to the time of Mr. Candler's death.

There is no claim made by plaintiffs that they were in any way influenced in the sale by the acts or representations of the defendants made direct to them. In fact, no personal interview or communication was had between any of them concerning it, except that Mr. Heigho on several occasions expressed a desire for a personal interview with the plaintiffs about it, and on June 20th, Mrs. Candler wrote the board of directors declining such interview and saying,—

"we have left the matter entirely in the hands of Mr. Gage, who is the administrator and who has full power to act for us."

Mr. Gage had many interviews with Mr. Heigho while the matter was pending, at some of which the other defendants were present. He was furnished with a copy of the report, presented to the stockholders by Mr. Candler as president, for the years 1908 and 1909, in which the condition of the corporation, both financial and otherwise, was set forth at considerable length. He expressed to the defendants a desire to keep the stock for the benefit of plaintiffs, and says they insisted on a sale under the by-law. He claims they refused to permit him to examine the books, but admits that from the information he got, and after going over the matter with others, he knew that the book value at the time of the transfer was $81 per share. Gage reported to the plaintiffs the result of all of his interviews with the defendants; showed

them the correspondence that passed between them, and advised them that—

"if they were to resort to legal procedure, if they were to resort to the arbitration that they would find that the stock was worth more than these men had said it was."

F. G. Rolland was a stockholder in the corporation. He had purchased some of Mr. Calvert's stock after his death, paying $47 a share for it. He had charge of the sales in the western district, with headquarters at Chicago. On March 4, 1910, Heigho wrote him relative to his conferences with Mr. Gage about the transfer of the stock. In this letter he said:

"I explained in careful detail at first the unwisdom of Mrs. Candler holding the stock even if she were free to do so, and then went further and stated that it was impossible for her to do it under the by-laws. * * *

"I submitted to him in a tentative way my idea of what Mrs. Candler should do in the matter of selling her stock to us, and it seemed to impress him very favorably. He is evidently very strongly desirous of getting in here and he or some members of the family may approach Mr. Ross, Mr. Huetwohl or yourself. In case this is done, you will, of course, be very diplomatic in what you say, and it may be wise to compare notes with me before you make any reply. In fact, if you receive any communication from them, you had better come over and hold a consultation with us collectively before you make any reply, if it seems to you to be at all advisable to do so.

"The more I think of the whole matter the more I am convinced that we can work it out to the satisfaction of everybody interested and without leaving any sore spots, but we must protect our own interests."

Two expert bond salesmen, Mr. Noble and Mr. Nebe, of Detroit, testified that the book value of the stock at the time of the transfer was $81 per share.

Mr. Heigho was cross-examined under the statute permitting same and admitted that the stock was paid

for by a loan secured by a note of himself and the other stockholders, and that this note was paid within 18 months out of insurance money received from a policy carried by the corporation on the life of Mr. Candler and the profits of the corporation.

The declaration, after describing the nature of the corporate business and the interests of the several defendants therein, and alleging the death of Mr. Candler and the appointment of Mr. Gage as administrator and setting out at length the by-law referred to, contains the following allegation:

"Plaintiffs further aver that at the time of his death the defendants, guided and directed largely by the defendant Heigho, fraudulently, wrongfully and maliciously combined and conspired to acquire from these plaintiffs the aforesaid seventeen hundred shares of the capital stock of the said Calvert Lithographing Company, formerly owned by Claudius H. Candler, at a grossly inadequate price and for a figure far below the real value of the stock aforesaid."

It further alleges that the defendants Heigho and Ross were appointed appraisers of the Candler estate and valued the stock in question at $45 per share; that the plaintiffs were ignorant of business methods and details and, being apprehensive for their future livelihood, were imposed on by defendants and induced to consent to the transfer of the stock at much less than its fair value; that the relations existing between defendants and plaintiffs were of such a confidential and fiduciary character that it was the duty of defendants to fully and fairly disclose to them all the facts which would have any bearing on the fairness of the transaction; that such representations as defendants made were false, and known by them to be so, and that in reliance thereon, and because of the wrongful and fraudulent acts and conspiracy of the defendants, the stock was transferred at a grossly inadequate value and that plaintiffs sustained great damage thereby.

At the conclusion of the plaintiffs' proofs, the trial court directed a verdict for the defendants for the reason that, no matter what misrepresentations were made by defendants as to the value of the stock, it was clear to him that the administrator did not rely thereon as he admitted that he then knew the book value of the stock to be $81 per share. From the judgment entered on such verdict the plaintiffs appeal.

There are several assignments of error, among them being that the court erred in directing a verdict for the defendants. We have set forth the testimony at considerable length for the reason that in the consideration of this action on the part of the trial court it must be viewed in the light most strongly tending to support the claim of the plaintiffs. There is no conflict of opinion as to the character of the proofs which plaintiffs must have submitted to entitle them to the verdict of a jury. It is well stated in 20 Cyc., at page 13:

"The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

That these several elements of such a charge must be established has long been the rule in this State. *Parker* v. *Armstrong,* 55 Mich. 176; *Frohlich* v. *Deacon,* 181 Mich. 255; *Kimble* v. *Gillard,* 177 Mich. 250. In the latter case the court said:

"It is a well-settled rule, familiar and fundamental, that, in order to make misrepresentation actionable, there must be a reliance upon the representation."

But if we concede, as did the trial judge, that there was sufficient evidence supporting the other elements to take this case to the jury, we feel constrained to hold, as he did, that the proofs clearly show that the administrator did not rely on anything that the defendants said in making the sale. He became convinced that the stock had a book value of $81. This was the same as that fixed by the bond salesmen who were called. He acted entirely on the information acquired from the reports furnished him and the independent investigation which he made. He realized fully that he had the right, and the defendants were urging him to exercise that right, to have the value of the stock fixed by arbitration under the provision in the by-law therefor. If he doubted the validity of the by-law, he was in no way prevented from testing it in any proper legal proceeding.

Conceding it to have been the duty of defendants to have rendered a fair and frank disclosure of all the facts affecting the financial condition of the company and the value of the stock, even if not asked for, how can any liability for a violation of such duty be predicated on a failure to disclose facts already within the knowledge of the administrator and which had been communicated by him to plaintiffs. How can it be said that any action or non-action, any information given or concealed, or any intent to deceive or defraud on the part of the defendants, in any way affected the judgment of the administrator or of the plaintiffs in deciding upon the wisdom of accepting the appraised value?

Neither the administrator nor the plaintiffs were unduly hurried in arriving at a decision. Mr. Gage admits that on June 26th he informed the defendants that he knew the book value of the stock was as stated. The transfer was not made until July 13th. During that period he had plenty of time, not only to advise

with plaintiffs but to take counsel concerning the advisability of submitting the question of value to arbitration or obtaining a judicial determination of the legal effect of the by-law. He admits that he submitted all the facts of which he was possessed and the conclusion he had reached therefrom as to the value of the stock to plaintiffs, and, while he says that he did not recommend either way, they finally decided to accept the appraised value. We are constrained to hold that any loss they sustained thereby is not recoverable in this action and that the verdict was properly directed for the defendants.

The conclusion reached renders it unnecessary to consider the other assignments of error.

The judgment is affirmed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.