SEPANSKE v BENDIX CORPORATION

Docket No. 75371. Submitted February 20, 1985, at Detroit.—Decided
    December 17, 1985. Leave to appeal applied for.

Larry T. Sepanske, a terminable-at-will employee of Bendix Cor-
    poration in its pension and payroll department, took advantage
    of Bendix's social service leave program in which an employee
    may volunteer to work for a charitable organization while
    collecting his salary from Bendix. Upon completion of the social
    service leave the employee is to return to his former position or
    to a position of equivalent or greater responsibility at the same
    location. Sepanske took his leave after being informed that he
    would return to his former position upon completion of the
    leave. Prior to Sepanske's return, however, he was informed
    that his former job was no longer available and that a search
    was being made for another position for him to fill. Sepanske
    indicated that he was most interested in a marketing or sales
    position, but he was finally instructed to work in Bendix's tax
    department or his employment would be terminated. The tax
    department position had the same job title and salary as
    Sepanske's former position, but he considered the new position
    to be of significantly lower rank and status than his previous
    position. Following fruitless negotiations with Bendix, Sepanske
    resigned his position in exchange for two month's salary and
    filed a breach of employment contract action against Bendix
    Corporation in 43rd District Court. Following a jury trial,
    Sepanske was awarded $75,206 in damages. The court, Joseph

REFERENCES

Am Jur 2d, Appeal and Error § 886.
Am Jur 2d, Master and Servant §§ 14-17.
Validity and enforceability of provision that employer shall be
    liable for stipulated damages on breach of employment contract.
    40 ALR4th 285.
Modern status of rule that employer may discharge at will em-
    ployee for any reason. 12 ALR4th 544.
Modern status as to duration of employment where contract speci-
    fies no term but fixes daily or longer compensation. 93 ALR3d
    659.
Employee's arbitrary dismissal as breach of employment contract
    terminable at will. 62 ALR3d 271.

Agnello, J., denied defendant's motions for judgment notwithstanding the verdict and for a new trial and entered judgment in favor of plaintiff. Defendant appealed to the Oakland Circuit Court, which affirmed the trial court's denial of defendant's motion for judgment notwithstanding the verdict, Steven N. Andrews, J. Defendant appealed by leave granted. *Held:*

1. The district court's denial of judgment notwithstanding the verdict was proper as to the defendant's claim that no breach of contract was established by the evidence.

2. Plaintiff was entitled to nominal damages only for defendant's breach of the employment contract. The jury's award of damages is vacated and the matter is remanded to the district court for entry of judgment in favor of plaintiff for nominal damages only.

3. The Employee Retirement Income Security Act does not preempt plaintiff's breach of employment contract action.

4. Defendant's contention that plaintiff, by accepting the tax department job, made an election which barred him from claiming a breach of contract is rejected. The doctrine of election is inapplicable in this case.

Remanded.

SHEPHERD, J., dissented from that portion of the majority's opinion dealing with damages. He would affirm the jury's verdict and award as to damages.

### OPINION OF THE COURT

1. APPEAL — JUDGMENT NOTWITHSTANDING THE VERDICT.

The Court of Appeals reviews the denial of a motion for judgment notwithstanding the verdict by considering the evidence in a light most favorable to the nonmoving party and determines whether evidence was offered upon which reasonable minds could differ; where reasonable minds could differ, the question should go to the jury.

2. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION AT WILL.

Either party to an at-will employment contract for an indefinite term may terminate it at any time and for any reason, unless the employer has violated a specific public policy in discharging the employee.

3. MASTER AND SERVANT — PERSONNEL POLICIES AND PRACTICES — CONTRACTUAL RIGHTS.

The establishment by an employer of specific personnel policies and practices creates enforceable contract rights.

4. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — SUBJECTIVE EXPECTATIONS.

An employee's subjective expectation that his employment is to be continuing does not create an enforceable contract right.

5. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION AT WILL — BREACH OF CONTRACT — DAMAGES.

An employee is entitled only to nominal damages for his employer's breach of an employment contract where the employee's expectation under that contract is for an at-will position which can be changed or terminated without consequence.

6. MASTER AND SERVANT — PENSION PLANS — EMPLOYEE RETIREMENT INCOME SECURITY ACT — SUPERSESSION OF STATE ACTIONS.

The Employee Retirement Income Security Act authorizes any pension plan participant to bring a federal civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan and supersedes any and all state laws relating to employee benefit plans not exempted by the act; however, not all state actions which affect or mention pension benefit plans are preempted or superseded by the act; those which affect employee benefit plans only in a tenuous or remote fashion are not preempted (29 USC 1132[a][1][B], 1144[a]).

DISSENT BY SHEPHERD, J.

7. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — BREACH OF CONTRACT — TERMINATION AT WILL — DAMAGES — BURDEN OF PROOF — PRESUMPTIONS.

*The fact that an employer's breach of a contract created by company policy led to an at-will employee's decision to resign rather than continue in another position within the company places upon the employer the burden of proving that the employee would have been discharged regardless of the breach if the employer is to avoid paying more than nominal damages for the breach; where the employer fails to sustain that burden of proof, the employee may be entitled to a presumption that his employment would have continued had it not been for the breach of contract and may be entitled to actual damages for lost income.*

*Donnelly & Associates, P.C.* (by *Timothy G. Hagan* and *Beth M. Rivers),* for plaintiff.

*Noel C. Crowley* and *Carol N. Lieber,* for Bendix Corporation.

Amicus Curiae:

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *George N. Bashara, Jr., Ronald J. Santo, Richard L. Hurford,* and *Michael R. Lied),* for Michigan Chamber of Commerce.

Before: WAHLS, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

PER CURIAM. Plaintiff, Larry T. Sepanske, was awarded $75,206 in damages following a district court jury trial of his breach of employment contract claim against the defendant. Defendant Bendix Corporation appeals by leave granted from the circuit court's affirmance of the 43rd District Court's refusal to grant defendant a judgment notwithstanding the veridct. We reverse the jury's award of damages.

Plaintiff was employed by defendant in 1969. In March, 1973, he began working in defendant's pension and payroll department. Later that year, he decided to participate in defendant's social service leave program, in which an employee may volunteer to work for a charitable organization while collecting his salary from defendant. Before plaintiff went on leave, he carefully examined defendant's policy manual, which provided in section G:

"G. REINSTATEMENT FROM A SOCIAL SERVICE LEAVE OF ABSENCE.
"1. Upon completion of the assignment, the employee will be reinstated to his former position or to a position of equivalent or greater responsibility at the same location from which leave was granted."

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Section D(3)(e) of the manual required defendant, prior to authorizing leave, to identify the specific position which the employee could return to:

"D. SELECTION OF APPLICANTS

"3. Upon reaching a preliminary decision as to the appropriateness of the Social Service Leave, the local Personnel representative will forward the request to Corporate Personnel and Organization Development for review and consideration. The following information on the candidate should be forwarded to Corporate Personnel and Organization Development.

\* \* \*

"e. Identification of a specific position(s) or assignment(s) that the employee could assume upon return from leave of absence."

Plaintiff's contention on appeal that defendant promised to return him to his former position in the pension and payroll department following his social service leave is based on a letter written in June, 1974, by George Giza, a personnel manager for defendant:

"We are pleased to advise you that your request for social leave of absence has been approved for the period August 1, 1974 through July 31, 1975. Please report to the Personnel Department at 2:00 p.m. on July 31, for your leave processing. Upon completion of your assignment you are *scheduled to return* to your former position with the Corporate Pension and Payroll Department. Also, you are requested to provide written and/or verbal reports concerning your social service leave assignment to Mr. K. Pearce and me. If you have any further questions, please let me know." (Emphasis added.)

Plaintiff began his social service leave in August, 1974, and returned in May, 1975. Prior to his

return, Giza told him that his job with the pension and payroll department was no longer available. Kenneth Pearce, plaintiff's supervisor in pension and payroll, informed plaintiff that they were searching for other jobs for plaintiff.[1] Plaintiff indicated he was most interested in a marketing or sales position. Contrary to plaintiff's preference, Giza instructed plaintiff to work in the tax department. Giza's supervisor, Anthony Procassini, told plaintiff to accept the tax department position or be terminated. Both Procassini and Giza testifed that they understood plaintiff wanted a management level position when he returned from leave, and that every effort was made to find him one. Giza indicated the tax department job, which had the same job title and salary as plaintiff's former position with pension and payroll, was the best opportunity he could locate.

Following denial of defendant's motion for a directed verdict, the jury was given a special verdict form, which it answered as follows:

"1. Did Bendix promise Mr. Sepanske before he went on social service leave of absence that at the end of his leave of absence he would be returned to his old job in the Pension and Payroll Department?

"*Answer:* Yes.

"2. Did Bendix reserve the right either to return Mr. Sepanski *[sic]* to his old position in the Pension and Payroll Department, or to a new position of equal or greater responsibility at the same location elsewhere within the Bendix organization?

"*Answer:* No.

"3. Was the position given to Mr. Sepanski *[sic]* in the

[1] Pearce explained that the pension and payroll department was reorganized while plaintiff was on social service leave. Plaintiff's job as a staff assistant was eliminated at that time. Pearce declined to place plaintiff in pension and payroll because that would have involved a job change for the woman who assumed many of plaintiff's duties in his absence.

Bendix Tax Department a position of significantly lower rank and status than his previous job in the Bendix Pension and Payroll Department?

"*Answer:* Yes.

"4. Did Mr. Sepanske settle his claim by accepting the position in the Bendix Tax Department as a substitute for his old position in the Pension and Payroll Department?

"*Answer:* No.

"5. Did Mr. Sepanske settle his claim by resigning his position in the Bendix Tax Department in exchange for two months' salary without having to report for work?

"*Answer:* No.

"6. Did Mr. Sepanske sustain any damages as a result of a wrongful failure by Bendix to return him to his old job in the Bendix Pension and Payroll Department?

"*Answer:* Yes.

"7. If your verdict on the previous question is 'yes', what was the amount of damages?

"*Answer:* $75,206.

"8. Did Mr. Sepanske sustain any damages as the result of a wrongful failure by The Bendix Corporation to return him to a position equivalent to his old job in the Bendix Pension and Payroll Department.

"*Answer:* Yes.

"9. If your verdict on the previous question is 'yes', what was the amount of the damages?

"*Answer:* $75,206."

Defendant's motion for judgment notwithstanding the verdict, which spawned this appeal, followed. It was denied by the district court. The circuit court affirmed.

I

On appeal, defendant first argues that plaintiff failed to produce sufficient evidence to establish a breach of employment contract. We review the denial of a motion for judgment notwithstanding the verdict by considering the evidence in a light

most favorable to the nonmoving party and determine whether evidence was offered upon which reasonable minds could differ. *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 792; 369 NW2d 223 (1985); *Goins v Ford Motor Co,* 131 Mich App 185, 191-192; 347 NW2d 184 (1983), *lv gtd* 422 Mich 857 (1985). Where reasonable minds could differ, the question should go to the jury. 131 Mich App 192.

We recognize that either party to an at-will employment contract for an indefinite term may terminate it at any time and for any reason, unless the employer has violated a specific public policy in discharging the employee. *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583, 588; 349 NW2d 529 (1984); *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692, 695; 316 NW2d 710 (1982); *Trombetta v Detroit, T & I R Co,* 81 Mich App 489, 495; 265 NW2d 385 (1978), *lv den* 403 Mich 855 (1978); *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981). However, the employment relationship is enhanced where, as here, the employer establishes specific personnel policies and practices. *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), *reh den* 409 Mich 1101 (1980). Such statements of company policy and procedure create enforceable contract rights. *Toussaint, supra,* pp 598, 609-610. While defendant was not duty bound to establish a policy for employees returning from social service leave, having done so, the policy became a contractual obligation. Defendant's employees could expect that the policies would be followed. *Toussaint, supra,* pp 613-615, 619.

It is undisputed that the policy manual provided that, upon plaintiff's return from social service leave, defendant had to reinstate him to his for-

mer position or to a position of equal or greater
responsibility. The evidence does not support the
jury's finding that defendant promised plaintiff
that he would be returned to his position in the
pension and payroll department. Nor does the
evidence support the jury's finding that defendant
did not reserve the right to place plaintiff in his
old position or a new one of equal or greater
responsibility. We do not believe that Giza's letter
to plaintiff stating that plaintiff was "scheduled to
return" to pension and payroll foreclosed the de-
fendant's right, reserved in its policy manual, to
return plaintiff to another job of equal or greater
responsibility. Moreover, plaintiff's subjective ex-
pectation does not create an enforceable contract
right. *Schwartz v Michigan Sugar Co,* 106 Mich
App 471, 478; 308 NW2d 459 (1981), *lv den* 414
Mich 870 (1982).[2]

Our finding on that issue is not, however, dispo-
sitive. The nature of plaintiff's job in the tax
department was the subject of conflicting evidence
upon which reasonable minds could differ. In the
pension and payroll department, plaintiff was the
second-ranking employee. He supervised other em-
ployees. In the tax department, plaintiff assisted in
preparation of tax returns. He did not supervise
other employees, and he reported to the fourth-
ranking person in the department. Plaintiff told
the jury he felt ill-equipped to handle the tax job,
and that he had to take a class to acquire basic
skills in tax and accounting. Plaintiff also testified
that he believed the position was low-level, and
that, because of his inexperience, it would take a
long time for him to advance. Several of defen-

---

[2] This result is unaffected by evidence presented by plaintiff that he
had long-term career goals in pension and payroll, that he received
excellent performance reviews, and that management had planned for
his future promotion.

dant's witnesses testifed that the tax job was a position of equal or greater responsibility. It carried the same salary and job title as plaintiff's position in the pension and payroll department.

We believe that, based on the evidence presented, reasonable minds could differ about whether the tax department job was a position in which the responsibility was equal to or greater than the responsibility in the position plaintiff held in pension and payroll. The question was one for the jury, which answered it in the negative. There was evidence presented which supported the jury's finding that the two jobs were not equivalent, and there was evidence that the two did not carry the same promotional opportunities, responsibilities, working conditions or status. See *Jenkins v American Red Cross, supra,* p 797; *Rasimas v Michigan Dep't of Mental Health,* 714 F2d 614, 624 (CA 6, 1983), *cert den* 466 US —; 104 S Ct 2151; 80 L Ed 2d 537 (1984). As plaintiff's breach of contract claim was premised on the breach of this promise, we find that the lower court's denial of judgment notwithstanding the verdict was proper as to the defendant's claim that no breach of contract was established by the evidence.

## II

Next we consider defendant's contentions regarding damages. Both defendant and amicus curiae, Michigan Chamber of Commerce, claim that plaintiff should not have been compensated for future lost earnings. Defendant additionally argues that plaintiff failed to mitigate damages when he resigned from the tax department job and resigned from a subsequent job at Tuff-Kote Dinol. Defendant also protests the jury's inclusion of plaintiff's probable salary increases in the damage calculation.

We take an entirely different approach on the issue of damages. We think that plaintiff was entitled to nominal damages only for defendant's breach of the employment contract. This is not a case of wrongful discharge. Plaintiff's expectation under the contract was to be restored to his old job or to an at-will position which was equivalent to or better than his position in pension and payroll, but he had no actionable expectation that any such restoration would be permanent. The position was still at will—one which the employer was free to alter or terminate without consequence. The fact that defendant historically had not arbitrarily reclassified positions or terminated employees does not change its right to do so. Plaintiff terminated the relationship without consequence when he resigned from the tax job. The jury's damage assessment in such a situation amounts to pure speculation. There is no tangible basis upon which damages may be assessed where plaintiff's expectation was for an at-will position which could have been changed or from which he could have been terminated without consequence. See *Sax v Detroit, G H & M R Co,* 129 Mich 502, 506; 89 NW 368 (1902). We therefore vacate the jury's award of damages. We remand to the district court for entry of judgment in favor of plaintiff for nominal damages only. 3 Restatement Contracts, 2d, § 346(2), p 110.

## III

Defendant next argues that plaintiff's action is barred by the exclusive remedy provision and preemption provisions of the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* ERISA authorizes any pension plan participant to bring a civil action to enforce compliance with the act. Section 1132(a) provides:

"A civil action may be brought—

"(1) by a participant or beneficiary—

\* \* \*

"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Section 1144(a) contains a preemption clause:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

State law superseded by ERISA includes case law. See 29 USC 1144(c)(1).

Not all actions which affect or mention pension benefit plans are preempted or superseded by ERISA. Some state actions are not preempted because they affect employee benefit plans only in a tenuous or remote fashion. *Shaw v Delta Air Lines Inc*, 463 US 85, 100, fn 21; 103 S Ct 2890; 77 L Ed 2d 490 (1983). ERISA has been found to preempt state law where a claim of wrongful discharge was based on a claim of retaliation for an employee's seeking disability benefits. See, *e.g., Witkowski v St Anne's Hospital of Chicago*, 113 Ill App 3d 745; 447 NE2d 1016 (1983); *Cf. Johnson v Transworld Airlines, Inc*, 149 Cal App 3d 518; 196 Cal Rptr 896 (1983).

We believe that ERISA's far-reaching scope does not preempt plaintiff's breach of employment contract action. Plaintiff was not wrongfully discharged because he attempted to collect pension benefits; plaintiff merely claimed the loss of ability

to earn pension benefits as an element of special damages. Plaintiff has made no claim for pension benefits; the trustees of the pension fund are not parties to this or any other proceeding. The only way in which this action significantly "relates to" the pension fund is the possible adverse effect a substantial judgment against defendant might have on its ability to make contributions to the fund. That possibility is obviously too tenuous and remote to warrant ERISA preemption, even if we had not decided the damages issue as we did.

## IV

Defendant finally contends that plaintiff, by accepting the tax department job, made an election which barred him from claiming a breach of contract. The doctrine of election is an equitable principle applied where a person has the choice of one or two alternates or inconsistent rights or remedies, and elects one over the other. 5 Williston on Contracts (3d ed), § 683, pp 269-270. We find the doctrine to be inapplicable in the instant case. Plaintiff's acceptance of the tax job was consistent with his duty to mitigate damages and was not inconsistent with his subsequent determination that it was not equal to his former position.

Remanded.

SHEPHERD, J. *(dissenting)*. I agree with the majority that there was sufficient evidence to support the jury's finding that defendant had breached the employment contract by not returning plaintiff to a position of equal or greater responsibility. As the majority stated: "While defendant was not duty bound to establish a policy for employees returning from social service leave, having done so, the policy became a contractual obligation. Defen-

dant's employees could expect that the policies would be followed." See generally *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). Here, defendant enhanced its standing in the community and with its employees through its social service leave policy. Plaintiff was induced to participate in this program by the defendant's assurance that an assignment of equal or greater responsibility awaited him upon his return and defendant benefited by plaintiff's participation in the program. However, while I agree with the majority in this respect, I cannot agree with the majority that plaintiff was entitled to only nominal damages for defendant's breach of contract.

Having found the contract broken, the majority would limit plaintiff to only nominal damages for the sole reason that plaintiff was an employee at will. The majority reason that as an employee at will, defendant could have fired plaintiff at any time, and therefore continued employment was speculative at best, too speculative to entitle plaintiff to actual damages for lost income. However, the simple fact that contractually defendant could have fired plaintiff at any time does not mean that they were *likely* to fire him at any time. The more reasonable presumption given common experience is that barring difficulties in defendant's business or plaintiff's performance, factors also present where the employment is not terminable at will, plaintiff's employment would have continued. Rather than being speculative, plaintiff's employment was likely to have continued and defendant's breach more likely than not did lead to the actual loss of income.

The majority's opinion is not only contrary to reasonable expectations, it also throws on the plaintiff the burden of proving a negative—namely

that defendant would not have fired him. That burden more reasonably belongs to the defendant to show that in fact circumstances were such that it more likely than not would have fired plaintiff. McCormick, Evidence (2d ed), § 337, pp 788-789, states:

"In summary, there is no key principle governing the apportionment of the burdens of proof. Their allocation, either initially or ultimately, will depend upon the weight that is given to any one or more of several factors, including: (1) the natural tendency to place the burdens on the party desiring change, (2) special policy considerations such as those disfavoring certain defenses, (3) convenience, (4) fairness, and (5) the judicial estimate of the probabilities."

Considering that the information is more readily available to the defendant than to the plaintiff, convenience favors placing the burden of proof on defendant to show that plaintiff would likely have been discharged. Moreover, here the breach has been established by plaintiff and the only issue remaining is damages. Under the majority's reasoning, every employee at will who establishes a breach of employment contract will be barred from recovering actual damages because the damages are supposedly speculative. It is my view that the damages are not so speculative as to entitle plaintiff to only nominal damages and that, in any event, public policy and fairness favor allocating the burden to defendant to show that in fact plaintiff would have been discharged. The result in this case allows defendant to appear to the world to be a good corporate citizen by placing its employees in public service while at the same time stripping the innocent employee of rights he likely would not have lost had he chosen not to participate in the program.

Defendant in this case offered no proofs that plaintiff would have been fired. I would conclude that in light of the lack of this evidence, plaintiff is entitled to the reasonable presumption that he would have continued employment but for defendant's breach. Since plaintiff put in proofs of his damages, I would affirm the jury's verdict.