TEPER v PARK WEST GALLERIES, INC

Docket No. 83194. Submitted March 19, 1986, at Detroit. Decided July 22, 1986. Leave to appeal applied for.

Plaintiff, Miriam Teper, a former employee of Park West Galleries, Inc. brought an action in the Oakland Circuit Court against defendants, Park West and Albert Scaglione, after her employment was terminated in 1982. Plaintiff alleged breach of an implied employment contract and defamation. A jury returned a verdict in favor of plaintiff of $14,660 as damages for lost wages and benefits, $89,220 as damages for lost pension benefits, and $500 as damages for slander. The trial court, Hilda R. Gage, J., entered an order and judgment on the verdict and thereafter denied defendants' motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Defendants appeal from the $89,220 award of damages for lost pension benefits. The Michigan Manufacturers Association's motion to file an amicus curiae brief was granted by the Court of Appeals. *Held:*

1. Plaintiff's claim for lost pension benefits is preempted by the Employee Retirement Income Security Act (ERISA).

2. The Park West retirement plan was established within the coverage of ERISA. Pursuant to the plan, plaintiff's entitlement to pension benefits is for an amount less than the amount the jury awarded as damages for lost pension benefits.

3. Plaintiff's remedy is to pursue whatever entitlement to pension benefits the Park West plan, subject to the provisions of the ERISA, provides. ERISA preempts the jury award.

Reversed.

1. Labor Relations — Retirement — Employee Retirement Income Security Act.

The Employee Retirement Income Security Act supersedes any

References

Am Jur 2d, Labor and Labor Relations §§ 325-354.

Am Jur 2d, New Topic Service, Pension Reform Act § 7.

Pre-emption of state fair employment laws under provisions of § 514 of Employee Retirement Income Security Act (29 USCS § 1114). 72 ALR Fed 489.

and all state laws insofar as they relate to any employee benefit plan covered by the act; the act defines "state law" to include all laws, decisions, rules, regulations, or other state action having the effect of law (29 USC 1001 *et seq.;* 29 USC 1144[c][1]).

2. LABOR RELATIONS — PENSION BENEFITS — EMPLOYEE RETIREMENT INCOME SECURITY ACT — PREEMPTION.

A damage award for lost pension benefits under a pension plan covered by the Employee Retirement Income Security Act must necessarily relate to the plan; insofar as the damage award departs from the plaintiff's entitlement to benefits under the plan, it is preempted by the act (29 USC 1001 *et seq.*).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Joseph A. Golden*), for plaintiff.

*Bodman, Longley & Dahling* (by *Charles N. Raimi* and *James J. Walsh*), for defendants.

Amicus Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, Robert G. Buydens, J. Walker Henry* and *David P. Uitvlugt*), for the Michigan Manufacturers Association.

Before: R. M. MAHER, P.J., and CYNAR and T. GILLESPIE,* JJ.

PER CURIAM. Plaintiff, a former employee of defendant Park West Galleries, Inc., brought this action for breach of an implied employment contract and defamation after her employment was terminated in 1982. Plaintiff's claims were tried to a jury, which returned a verdict in favor of plaintiff of $14,660 as damages for "lost wages and benefits," $89,220 as damages for "lost pension benefits" and $500 as damages for slander. Defendants moved for a judgment notwithstanding the

* Circuit judge, sitting on the Court of Appeals by assignment.

verdict or, in the alternative, for a new trial. The trial court denied this motion. Defendants appeal as of right only from the award of damages for lost pension benefits. We reverse.

Defendants first argue that plaintiff's claim for lost pension benefits is preempted by the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* On the basis of ERISA's plain language and controlling federal precedent, we agree.

During plaintiff's employment, Park West established a defined benefit retirement plan within the coverage of ERISA. Plaintiff herself introduced the plan into evidence at trial and her attorney referred to the Park West plan in his summation to the jury. The plan establishes requirements for vesting, which plaintiff met, and also specifies in art 6, § 5, the entitlement of a plan participant, such as plaintiff, who "is terminated for any reason prior to Normal Retirement Date . . ."; that entitlement, in plaintiff's case, is far less than the amount the jury awarded as damages for lost pension benefits.

ERISA contains a very broad preemption provision. With exceptions not relevant herein, congress declared that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 USC 1144(a). The same section later defines "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law . . . ." 29 USC 1144(c)(1). There is no exaggeration in the observation that ERISA contains the "most sweeping preemption statute ever enacted." *Authier v Ginsberg,* 757 F2d 796, 801, n 8 (CA 6, 1985).

The Supreme Court has stressed the breadth of ERISA's preemption in several decisions. In *Alessi v Raybestos-Manhattan, Inc,* 451 US 504; 101 S Ct

1895; 68 L Ed 2d 402 (1981), retirees challenged the offset of workers' compensation benefits against their pension benefits. Their pension plan, covered by ERISA, allowed the offsets, but the New Jersey workers' compensation statute prohibited them. The Supreme Court held that ERISA, which permitted the offsets in the pension plan, preempted the state statute:

> It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called "pension regulation." ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For the purposes of the pre-emption provision, ERISA defines the term "State" to include: "a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, *directly or indirectly,* the terms and conditions of employee benefit plans covered by this subchapter." 29 U.S.C. § 1144(c)(2) (emphasis added). ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision. [451 US 525.]

More recently, in *Shaw v Delta Air Lines, Inc,* 463 US 85; 103 S Ct 2890; 77 L Ed 2d 490 (1983), the Court held that New York's statutory provision on pregnancy benefits was superseded by the provisions of an employer's benefit plan under ERISA. The Court wrote:

> We have no difficulty in concluding that the Human Rights Law and Disability Benefits Law "relate to" employee benefit plans. The breadth of § 514(a)'s [of ERISA] pre-emptive reach is apparent from that section's language. A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to

such a plan. Employing this definition, the Human Rights Law, which prohibits employers from structuring their employee benefit plans in a manner that discriminates on the basis of pregnancy, and the Disability Benefits Law, which requires employers to pay employees specific benefits, clearly "relate to" benefit plans. We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning. [463 US 96-97.]

The decisions by the lower federal courts on ERISA preemption are far too numerous to cite, but plaintiff has directed our attention to a recent federal decision, *Martori Bros Distributors v James-Massengale,* 781 F2d 1349 (CA 9, 1986), which appears to give less scope to preemption under ERISA than prior decisions. *Martori,* however, does not control here. There are factual differences between this case and *Martori,* which concerned a "make-whole" remedy ordered by the California Agricultural Labor Relations Board. Most significant is the fact that the remedy in *Martori* was determined on the basis of a hypothetical benefit package that employees had not obtained because their employer had bargained in bad faith. Additionally, the narrow reading of the ERISA preemption in *Martori* is in conflict with the Supreme Court's view that ERISA preemption is expansive. Where *Martori* held that "state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefit plans," 781 F2d 1358, the Court in *Shaw* announced:

Nor, given the legislative history, can 514(a) be interpreted to pre-empt only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable

only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language. [463 US 98.]

Other jurisdictions have recognized the far reaching scope of ERISA preemption. E.g., *Hunt v Sherman,* 345 NW2d 750 (Minn, 1984); *Witkowski v St Anne's Hospital of Chicago, Inc,* 113 Ill App 3d 745; 447 NE2d 1016 (1983).

The judgment for plaintiff on the basis of the jury's award of damages for lost pension benefits is a "state law," as ERISA broadly defines that term, and it clearly "relates to" a retirement plan governed by ERISA. Plaintiff's remedy, then, is to pursue whatever entitlement to pension benefits the Park West plan, subject to the provisions of ERISA, provides. ERISA preempts the jury award.

The most helpful brief of the amicus points out that the regulations promulgated pursuant to ERISA specifically deal with additional pension benefits for an employee, such as plaintiff, who successfully asserts a claim for lost wages. The regulations, which the Park West plan incorporates by reference, provide for additional pension benefits on the basis of an award of back pay. See 29 CFR 2530.200b.

Another panel of this Court, in *Sepanske v Bendix Corp,* 147 Mich App 819; 384 NW2d 54 (1985), reached a different conclusion than we do here. In *Sepanske,* after vacating a jury's damage award as speculative and remanding for entry of a judgment of nominal damages only, this Court addressed the question of ERISA preemption. In a brief discussion, the Court decided that plaintiff's claim was not preempted because it was "too tenuous and remote" to defendant's pension plan

covered by ERISA.[1] This, of course, was dicta because the Court vacated the jury's verdict. More importantly, the Court's opinion is sketchy on what plaintiff presented to support his claim of damages for "loss of ability to earn pension benefits." Plaintiff in *Sepanske* "made no claim for pension benefits," whereas the jury here made a specific award for "lost pension benefits." Additionally, without some reference to a pension plan on which to calculate the value of a "lost" pension, any damage award would suffer from being speculative, the basis on which the *Sepanske* Court vacated the jury's award of any damages. In other words, it seems unlikely that a claim for pension benefits (including one labelled "loss of opportunity to earn pension benefits") could overcome the obstacles of ERISA preemption *and* the law's repugnance of speculative damage awards. If plaintiff, in order to prove damages with the degree of certainty the law requires, introduces a pension plan covered by ERISA, then the damage award must necessarily "relate to" the plan and, insofar as the award departs from plaintiff's entitlement under the plan,[2] it is preempted.

Finally, as Park West argued, sound policy coincides with the expansive preemption provision found in ERISA. Uniformity and certainty as to controlling law will encourage employers to establish pension plans. The possibility of jury awards for "lost pension benefits" that far exceed a plaintiff's entitlement under the pension plan itself would not create "a favorable setting for the

---

[1] *Shaw*, in a footnote, recognized that some state action may affect a plan in "too tenuous, remote, or peripheral a manner" to require preemption and gave the example of garnishment to enforce alimony and support orders. 463 US 100, n 21.

[2] The jury's award of damages for "lost pension benefits" exceeded, by more than ten times, the present value of plaintiff's pension benefits calculated in accordance with the plan's provisions.

growth and development of private pension plans."
Statement by Rep. Ullman, 1974 US Code Cong &
Ad News 5166, 5167. The Supreme Court in *Shaw,*
while recognizing the importance of state anti-dis-
crimination laws, gave priority to "ERISA's compre-
hensive pre-emption of state law" which was in-
tended to minimize "interference with the admin-
istration of employee benefit plans." 463 US 105, n
25. The prospect of jury awards under state law
for lost pension benefits is a severe disincentive to
the establishment of private pension plans and
inconsistent with ERISA's express preemption of all
state laws that "relate to" plans under its cover-
age.

Reversed.