HORD v ENVIRONMENTAL RESEARCH INSTITUTE OF MICHIGAN

Docket No. 200481. Submitted November 5, 1997, at Detroit. Decided March 17, 1998, at 9:05 A.M. Leave to appeal sought.

R. Michael Hord brought an action in the Washtenaw Circuit Court against Environmental Research Institute of Michigan, seeking damages on the bases of theories of fraudulent misrepresentation and silent fraud following his employment with the defendant and subsequent layoff. The jury awarded the plaintiff damages and the court, Donald E. Shelton, J., entered a judgment consistent with the verdict. The defendant appealed from that order and orders denying its motions for a directed verdict and judgment notwithstanding the verdict (JNOV) with regard to the fraudulent misrepresentation claim.

The Court of Appeals *held*:

1. The court did not err in denying the defendant's motions for a directed verdict and JNOV. The plaintiff presented evidence of an affirmative misrepresentation by the defendant that the defendant intended the plaintiff to rely on. There was evidence that the representation by the defendant was false and that the defendant knew that it was false when made. Finally, there was evidence that the plaintiff relied on the misrepresentation and suffered injury.

2. The court did not err in allowing the jury to consider the plaintiff's claim for future wage loss. Although the defendant's contention that, because the plaintiff was an at-will employee, he was only entitled to nominal damages, may be correct in a breach of contract action, it is not applicable in a tort action, where nominal damages would not provide a meaningful remedy for an employee who is defrauded or sufficiently deter an unscrupulous employer. There was evidence from which the jury could estimate the plaintiff's future wage loss.

3. The jury instructions as a whole adequately presented the applicable law. The instructions did not permit the jury to infer intent on the basis of a collective knowledge theory. Knowledge and intent were described as separate elements, both of which had to be present before the jury could find the defendant liable. No error requiring reversal occurred with regard to the jury instructions.

Affirmed.

HOEKSTRA, P.J., dissenting, stated that the matter should be reversed on the basis that the trial court erred in denying the defendant's motion for a directed verdict. The majority blurred the factual and legal distinctions between the common-law fraud and silent fraud theories under which the plaintiff proceeded at trial. The plaintiff did not present evidence to support the threshold element of a silent fraud claim regarding the defendant's duty to disclose. The common-law fraud claim, based on the defendant's alleged representations that it intended to provide the plaintiff with sufficient time and resources to establish his program, should have been dismissed by the granting of the defendant's motion for a directed verdict. Even if the alleged representations constitute representations of the defendant's intent, no evidence established that the statements were, in fact, false when the defendant made them.

1. DAMAGES — TORTS — AT-WILL EMPLOYEES — FUTURE LOST WAGES.

A plaintiff who was an at-will employee may be entitled to only nominal damages in a breach of contract action against the plaintiff's employer, but the same is not true in a tort action against the employer where nominal damages would not provide a meaningful remedy for the employee who was defrauded or sufficiently deter the unscrupulous employer; an award of future lost wages may be appropriate in such a tort action.

2. APPEAL — JURY INSTRUCTIONS.

Jury instructions are reviewed as a whole to determine whether they adequately informed the jury of the applicable law, given the evidentiary claims of the case.

*Green, Green & Craig, P.C.* (by *Philip Green*), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Robert W. Powell*), for the defendant.

Before: HOEKSTRA, P.J., and WAHLS and GRIBBS, JJ.

WAHLS, J. In this fraud action, a jury awarded plaintiff $175,000 in damages stemming from his decision to accept employment with defendant and his subsequent layoff. Defendant now appeals as of right. We affirm.

Many of the facts in this case are undisputed. Plaintiff was working in the aerospace division at General Electric in 1992 when he began looking for other employment. He interviewed for a job with defendant in September or October 1992. At that interview, he was given a copy of defendant's operating summary for the fiscal year ending September 30, 1991. The parties did not engage in further discussion of the operating summary or of defendant's financial condition at that time. Defendant was apparently interested in hiring plaintiff to develop a new program in high-performance computing. There was some discussion regarding the length of time defendant would be willing to support such a program before it became self-sustaining. However, neither party made any definite statements about how long they expected this process to take.

Defendant hired plaintiff in January 1993. Sometime between 1991 and 1994, defendant apparently suffered financial reverses. Plaintiff's employment was reduced to eighty percent in January 1994, and he was notified of an impending layoff in June of that year. He resigned a month later in exchange for a $10,000 consulting agreement. He then filed the current suit, alleging that defendant committed fraud in order to induce him to accept its offer of employment. He alleged that defendant made knowingly false representations regarding its disposition and ability to fund long-range product development. According to plaintiff, defendant's financial position had weakened significantly between the time of the 1991 operating summary and the time he was hired. He argued that he would not have accepted the job if he had known defendant's actual financial status. The

case was submitted to the jury on theories of fraudulent misrepresentation and silent fraud.[1] Using a simple verdict form that did not indicate which theory it was relying on, the jury awarded plaintiff $175,000 in damages.

On appeal, defendant first argues that the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict (JNOV)with regard to plaintiff's fraudulent misrepresentation claim. Defendant contends that plaintiff failed to present any evidence of an affirmative misrepresentation that would allow the jury to hold defendant liable on that basis. We disagree. We have recently summarized the appropriate standards of review:

> The standard of review for JNOV requires review of the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence, so viewed, fails to establish a claim as a matter of law, should a motion for JNOV be granted. Similarly, in deciding a motion for a directed verdict, the trial court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in favor of the nonmoving party. This Court reviews all the evidence presented up to the time of the motion to determine whether a question of fact existed. [*Phinney v Perlmutter*, 222 Mich App 513, 524-525; 564 NW2d 532 (1997) (citations omitted).]

We review the trial court's decision de novo. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997), lv pending.

---

[1] We use the phrase "fraudulent misrepresentation" to denote a standard fraud claim based on an affirmative statement. In contrast, "silent fraud" involves a failure to disclose information where there is a duty to do so.

There are six essential elements of a fraud claim: (1) that the defendant made a material representation; (2) that it was false; (3) that when the defendant made it the defendant knew that it was false, or that the defendant made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that the defendant made it with the intention that it should be acted on by the plaintiff; (5) that the plaintiff acted in reliance on it; and (6) that the plaintiff thereby suffered injury. *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919), overruled in part on other grounds in *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 120-121; 313 NW2d 77 (1981); *Clement-Rowe v Michigan Health Care Corp*, 212 Mich App 503, 507; 538 NW2d 20 (1995). " 'Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.' " *Candler, supra* at 121 (citation omitted).

Defendant's contention that it made no affirmative misrepresentations ignores the fact that the jury could have found that defendant's presentation of its 1991 operating summary to plaintiff in September 1992 was a misrepresentation. Defendant repeatedly argues that the 1991 operating summary was clearly labeled "For the Fiscal Year Ending September 30, 1991," and, therefore, that it could not have constituted a misrepresentation regarding defendant's financial position in 1992, and that plaintiff could not have been misled by it. The flaw in this argument is exposed by simply asking: Why did defendant give plaintiff a copy of its 1991 operating summary? Clearly, the act of giving plaintiff the operating summary constituted an endorsement of its contents and

a representation that the summary was somehow a reflection of defendant's current financial strength.[2] This was obviously a material representation, and the act of giving the operating summary to plaintiff during a job interview allowed the jury to infer that defendant intended that plaintiff act on it. In addition, there was evidence that, at the time defendant gave plaintiff the 1991 operating summary, it had more current financial information that suggested that it was in a much weaker financial position than it was in September 1991. From this evidence, the jury could have concluded that the representation regarding defendant's financial strength was false and that defendant knew that it was false when made. Finally, plaintiff testified that he relied on this representation in making his decision to accept defendant's offer of employment, and there was evidence that plaintiff suffered injury. Consequently, we find no error in the trial court's decision to deny defendant's motions for a directed verdict and for JNOV regarding plaintiff's fraudulent misrepresentation claim.

Defendant next argues that plaintiff's claim for future lost wages was too speculative to be submitted to the jury. We disagree. Defendant contends that, because plaintiff was an at-will employee, he was only entitled to nominal damages. While this might be true in a breach of contract action, *Sepanske v Ben-*

---

[2] Defendant would have us construe its action as no more than a statement of its financial condition as of September 31, 1991. Such a construction defies common sense. When defendant gave plaintiff the operating summary in September or October 1992, it was clearly offering it as some indication of its current financial strength. Thus, the representation was not "Here is our 1991 operating summary, which is irrelevant in regard to our current financial strength." Rather, it was effectively "Here is our 1991 operating summary, which reflects, at least to some degree, our current financial situation."

*dix Corp,* 147 Mich App 819, 828-829; 384 NW2d 54 (1985), it is not the case in a tort action. *Phillips v Butterball Farms Co, Inc (After Second Remand),* 448 Mich 239, 241-242, 253-254; 531 NW2d 144 (1995). While *Phillips* involved a retaliatory discharge claim, we believe the same logic applies here. Nominal damages would not provide a meaningful remedy for an employee who is defrauded, nor would they sufficiently deter unscrupulous employers. See *id.* at 254. Indeed, extending *Sepanske* to tort claims would allow a tortfeasor to avoid paying damages for future wage loss any time the injured party was an at-will employee. We decline to extend *Sepanske* beyond breach of contract actions. While the exact amount of future wage loss cannot be fixed with mathematical certainty, there was evidence from which the jury could estimate plaintiff's future wage loss. The trial court did not err in allowing the jury to consider plaintiff's claim for future wage loss.

Finally, defendant challenges one of the jury instructions. The trial court read the following instruction regarding the knowledge of a corporation: "The knowledge of an individual officer or employee at a certain level of responsibility will be deemed to be the knowledge of a corporation." We review jury instructions as a whole to determine whether the instructions adequately informed the jury of the applicable law, given the evidentiary claims of the case. *Holland v Liedel,* 197 Mich App 60, 65; 494 NW2d 772 (1992).

While the challenged instruction was not necessary in this case, the instructions as a whole adequately presented the applicable law. Defendant relies on *Adams v Nat'l Bank of Detroit,* 444 Mich 329; 508

NW2d 464 (1993), for the proposition that this instruction was improper. Indeed, *Adams* does stand for the proposition that "collective knowledge" cannot be the basis for a finding of intent: "We hold that intent to commit tortious acts cannot be imputed to a corporation on the basis of disconnected facts possessed by various employees or agents of that corporation, where there is no evidence that any employee possessed the requisite state of mind." *Id.* at 368-369 (BRICKLEY, J.), 343 (BOYLE, J.). However, the instructions in this case did not permit the jury to find intent on the basis of collective knowledge. The jury was instructed as follows regarding plaintiff's silent fraud claim:

> To establish fraud based on the failure to disclose facts, the plaintiff has the burden of proving each of the following elements by clear and convincing evidence:
>
> First, that the defendant failed to disclose material facts about the financial condition of ERIM, the defendant.
>
> Second, that the defendant had actual knowledge of these facts.
>
> The knowledge of an individual officer or employee at a certain level of responsibility will be deemed to be the knowledge of a corporation.
>
> Third, that the defendant's failure to disclose these facts caused the plaintiff to have a false impression.
>
> Next, that when the defendant failed to disclose those facts, the defendant knew that failure would create that false impression.
>
> Next, *when the defendant failed to disclose the facts, the defendant intended that the plaintiff rely on the resulting false impression.*

Clearly, knowledge and intent were described as separate elements, both of which had to be present before the jury could find defendant liable. Thus,

*Adams* is simply inapplicable; the instructions here did not permit the jury to infer intent on the basis of a "collective knowledge" theory. While the trial court would have been better advised to omit the challenged instruction, we find no error requiring reversal.

Affirmed.

GRIBBS, J., concurred.

HOEKSTRA, P.J. (*dissenting*). I respectfully dissent. I would conclude that the trial court erred in denying defendant's motion for a directed verdict. Accordingly, I would reverse the judgment for plaintiff.

The majority supplies the following six elements of a fraud claim: (1) that the defendant made a material representation; (2) that it was false; (3) that when the defendant made it the defendant knew that it was false, or that the defendant made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that the defendant made it with the intention that it should be acted on by the plaintiff; (5) that the plaintiff acted in reliance on it; and (6) that the plaintiff thereby suffered injury. *Clement-Rowe v Michigan Health Care Corp*, 212 Mich App 503, 507; 538 NW2d 20 (1995). Although these are the proper elements for a traditional common-law fraud claim, the majority blurs the factual and legal distinctions between this and a second fraud theory under which plaintiff proceeded at trial. See *Lorenzo v Noel*, 206 Mich App 682, 684-685; 522 NW2d 724 (1994). Here, plaintiff alleged that defendant committed not only traditional common-law fraud on the basis of a false representation to plaintiff, but also silent fraud on the basis of its failure to disclose material facts. A silent fraud

claim differs from a traditional fraud claim in that the false representation needed to establish the first three elements of fraud may be shown by the defendant's failure to divulge a fact that the defendant had an affirmative duty to disclose. *Clement-Rowe, supra* at 508.

Plaintiff's silent fraud claim is based on the fact that early in the five-month courtship of plaintiff, defendant gave plaintiff a 1991 operating summary, which demonstrated consistent growth in revenue, but defendant later failed to disclose its changing financial condition in the form of 1992 financial statements, which showed a loss in revenue. Additionally, plaintiff claims that defendant failed to disclose that it laid off approximately seventy employees in 1992. Thus, plaintiff argues that defendant had a duty to disclose its adverse financial conditions to him and intended to induce him to rely on its nondisclosure.

However, on the facts of this case, defendant had no affirmative duty to disclose the 1992 financial information. This Court in *Clement-Rowe, supra* at 508-509, stated that an employer may not be permitted to avoid liability after omitting to disclose, *when asked,* known economic instability that later led to economically based layoffs. Here, plaintiff never asked defendant about its financial condition during the interview process. Because plaintiff did not present evidence to support the threshold element of defendant's duty to disclose, I would conclude that the trial court erred in denying defendant a directed verdict with regard to plaintiff's silent fraud claim.

Plaintiff's second theory of recovery, his false representation or traditional common-law fraud claim, is based on defendant's alleged representations during

the interview process that it intended to provide plaintiff with sufficient time and resources to establish his program. Specifically, plaintiff relies on an anecdote about a past program that defendant supported for ten years before the program was profitable and a statement in defendant's subsequent offer of employment that defendant was "highly committed over the near- and long-term" to participation in defendant's specialty area.

Even assuming that these two items constitute representations of defendant's intent, plaintiff has presented no evidence to establish that the statements were, in fact, false when defendant made them. The fact that plaintiff inferred from the anecdote and the statement in the letter an amount of time longer than that which actually transpired, does not constitute fraud on the part of defendant when neither party stipulated a specific length of time. Therefore, I would conclude that the trial court erred in denying defendant a directed verdict with regard to plaintiff's false representation claim as well.

Last, I note that I agree with the majority's analysis of defendant's remaining issues on appeal, although my resolution of the directed verdict issue makes it unnecessary to reach these issues.