## TEPER v PARK WEST GALLERIES, INC

Docket No. 79642. Argued November 4, 1987 (Calendar No. 8). Decided August 24, 1988. Rehearing denied *post,* 1207.

Miriam Teper brought an action in the Oakland Circuit Court against Park West Galleries, Inc., and Albert Scaglione, its owner, alleging wrongful discharge from her employment and claiming damages for past and future compensation, including future pension benefits. The court, Hilda R. Gage, J., entered judgment on a jury verdict for the plaintiff. The Court of Appeals, MAHER, P.J., and CYNAR and T. GILLESPIE, JJ., reversed in an opinion per curiam, ruling that the Employee Retirement Income Security Act preëmpted the award of damages for lost pension benefits (Docket No. 83194). The plaintiff appeals.

In an opinion by Justice BOYLE, joined by Justices BRICKLEY, CAVANAGH, and ARCHER, the Supreme Court *held:*

The award of future pension benefits in a wrongful discharge action under Michigan law against an employer, rather than against an employee benefit plan or an administrator or fiduciary of the plan, was not precluded by the preëmption provision of the Employee Retirement Income Security Act.

1. The ERISA was intended to make pension profit-sharing and stock bonus plans more effective in providing retirement income for employees. The act applies to private retirement plans which are voluntary on the part of employers. It was designed to increase the number of persons participating in retirement plans, to ensure that those who participate do not lose benefits as a result of unduly restrictive forfeiture provisions or failure of the plans to accumulate sufficient funds to meet obligations, and to make tax laws relating to such plans fairer by providing greater equality of treatment for the different taxpaying groups involved. To accomplish these goals, the ERISA imposes participation, funding, and vesting requirements on pension plans,

REFERENCES

Am Jur 2d, Pensions and Retirement Funds § 1.

What constitutes a "pension" within meaning of federal statutes excluding actions on claims for pensions from jurisdiction of federal courts. 40 ALR2d 646.

setting various uniform standards for reporting, disclosure, and fiduciary responsibility. However, the act does not mandate that employers provide any particular benefits; rather, it creates a national body of law regulating such plans, including a preëmption provision which supersedes all state laws insofar as they relate to a covered benefit plan.

2. Federal case law has held that an expressly preëmptive relationship to an ERISA plan is established when a state law interferes with a benefit plan by altering the level of benefits which would be paid out under the plan from state to state, by altering the terms of a plan such as the requirements for eligibility, or by subjecting the fiduciaries of a plan to claims other than those provided for in the ERISA. Express preëmption turns upon whether the state law places any fiscal, administrative, or legal burdens upon the plan, not upon hypothetical possibilities. There must be a real, if only indirect, relationship between a challenged state law and an employee benefit plan. Proper analysis of the scope of the preëmption provision requires more than an inquiry into whether a state law is logically related to an ERISA plan; it must be guided by respect for the separate spheres of governmental authority preserved in the federalist system. Where state actions are found to be too tenuous, remote, or peripheral, ERISA preëmption will not obtain.

3. In this case, because the award of future pension benefits did not impose an administrative, fiscal or legal burden upon the pension plan or an administrator or a fiduciary of the plan, it does not relate to a pension plan within the meaning of the ERISA. Thus, Michigan law is not preëmpted.

Chief Justice RILEY, joined by Justice LEVIN, concurring, stated that the sole basis for the plaintiff's claim of wrongful discharge is Michigan common law. An action for breach of an employment contract traditionally has been a matter of state regulation that Congress presumably did not intend to preëmpt. The rights and duties of the parties in this case arise from a contract of employment founded entirely upon state law, rather than upon the federal Employment Retirement Income Security Act. Under § 1144 of the ERISA, a state law is preëmpted if it relates to an ERISA plan and purports to regulate its terms and conditions. A state law relates to an employee benefit plan if it has a connection with or reference to the plan. But to initiate preëmption, the state law must also purport to regulate a term or condition of the plan.

In this case, the plan provides for vested and not future pension credits in the event an employee is terminated. Federal

regulations involve the determination of an employee's accrued benefit. There is no language in the federal regulations or the plan itself concerning the determination of future benefits under an employment contract.

Reversed.

Justice GRIFFIN, dissenting, stated that the plaintiff's claim for future pension benefits as part of her wrongful discharge action under *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579 (1980), is precluded by the preëmption provision of the Employment Retirement Income Security Act, particularly in light of the fact that a remedy relating to such benefits was available under the terms of her employer's pension plan and the regulations promulgated under the ERISA. The plaintiff's claim clearly had a connection with or reference to the defendant's ERISA plan because it was necessarily based on the existence and terms and conditions of the pension plan. Insofar as under *Toussaint* Michigan law otherwise might allow an award in excess of entitlement under the plan, it is preëmpted.

153 Mich App 520; 396 NW2d 210 (1986) reversed.

LABOR RELATIONS — RETIREMENT — EMPLOYEE RETIREMENT INCOME SECURITY ACT — PREËMPTION.

An award of future pension benefits in a wrongful discharge action under Michigan law against an employer, rather than against an employee benefit plan or an administrator or fiduciary of the plan, did not relate to the pension plan within the meaning of the Employee Retirement Income Security Act and thus was not precluded by the preëmption provision of the act (29 USC 1144[a]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Joseph A. Golden* and *Patrick Burkett*), for the plaintiff.

*Bodman, Longley & Dahling* (by *James J. Walsh, Charles N. Raimi,* and *Jeanne A. Van Egmond*) for the defendants.

Amici Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, Robert G. Buydens, J. Walker Henry,* and *Beverley B. Brielmaier*) for Michigan Manufacturers Association.

*Stark & Gordon* (by *Sheldon J. Stark*) for Michigan Trial Lawyers Association.

BOYLE, J. In this case we are asked to consider whether an award of future pension benefits in a wrongful discharge claim under Michigan law is precluded by the preëmption provision of § 514 of the Employee Retirement Income Security Act, 29 USC 1144(a). We conclude that the ERISA does not expressly[1] preëmpt Michigan law in this area. We therefore reverse the decision of the Court of Appeals and reinstate that portion of the trial court's amended judgment awarding future pension benefits.[2]

I

The plaintiff was first employed by defendant Park West Galleries on August 1, 1976, at the age of forty-four. She was initially hired as a part-time bookkeeper but was given a full-time position after two months. In 1978, the plaintiff was promoted to executive assistant and instructed by the owner of Park West Galleries, Albert Scaglione, to hire an assistant to perform her former bookkeeping functions. In subsequent years, as the business grew, the plaintiff was given the position of director of marketing, auction, and sales. Albert Scaglione assured the plaintiff at various times during her employment that her position was a secure one which would be available for her lifetime if she continued to perform well. In 1980, the plaintiff qualified for participation in Park West Galleries defined benefit pension plan. On June 19, 1981, at

[1] See n 15.
[2] We view the Court of Appeals decision as affirming the balance of the amended judgment entered by the trial court.

the age of forty-nine, the plaintiff was discharged from her employment at Park West Galleries.

The plaintiff filed a claim in circuit court on July 27, 1982, alleging, inter alia, that she had been wrongfully discharged in violation of her contract of employment. The plaintiff claimed damages in the nature of past and future compensation, including future pension benefits. The plaintiff's claims were tried before a jury on January 17-26, 1984. At the close of proofs, the defendants moved for a directed verdict on the claim for pension benefits,[3] citing the preëmption provision of the ERISA, 29 USC 1144(a). The trial court denied the motion but submitted the question of pension benefits to the jury for a special verdict. The jury returned a verdict for the plaintiff, finding damages for lost pension benefits in a present value amount of $89,220.[4] The trial court subsequently denied the defendants' alternative motions for judgment notwithstanding the verdict or a new trial on the same ERISA preëmption ground.

The defendants appealed the trial court's ruling in the Michigan Court of Appeals, raising the single issue of preëmption. In a decision dated July 22, 1986, the Court of Appeals reversed, ruling that the ERISA preëmpted the award of damages for lost pension benefits.[5] We granted leave to appeal in an order dated March 24, 1987.

[3] The claim for pension benefits was for future benefits, excluding those for which the plaintiff was already vested under the plan at the time of her discharge.

[4] The jury also found damages in the amount of $14,660.80 for front and back pay as well as $500 for slander per se, although those damages are not at issue in this appeal.

[5] A contrary conclusion was reached by another Court of Appeals panel in *Sepanske v Bendix Corp,* 147 Mich App 819; 384 NW2d 54 (1985).

II

A. THE STATUTE

The ERISA, as explained by the United States
Senate Committee on Finance,

> [i]s designed to make pension profit-sharing, and
> stock bonus plans more effective in providing re-
> tirement income for employees who have spent
> their careers in useful and socially productive
> work. It encourages provision for the retirement
> needs of many millions of individuals. At the same
> time, the committee recognized that private retire-
> ment plans are voluntary on the part of the em-
> ployer, and, therefore, it has carefully weighed the
> additional costs to the employer and minimized
> them to the extent consistent with minimum stan-
> dards for retirement benefits.
> In broad outline, the bill is designed—
> (1) to increase the number of individuals partici-
> pating in retirement plans;
> (2) to make sure that those who do participate in
> such plans do not lose their benefits as a result of
> unduly restrictive forfeiture provisions or failure
> of the plan to accumulate and retain sufficient
> funds to meet its obligations; and
> (3) to make the tax laws relating to such plans
> fairer by providing greater equality of treatment
> under such plans for the different taxpaying
> groups involved. [93d Cong (2d Sess), 1974 US Code
> Cong & Admin News, p 4890.]

To accomplish these goals, the statute imposes
participation, funding, and vesting requirements
on pension plans. It also sets various uniform
standards for reporting, disclosure, and fiduciary
responsibility under both pension and welfare
plans. However, the ERISA does *not* mandate that
employers provide any particular benefits. *Shaw v
Delta Air Lines, Inc,* 463 US 85, 91; 103 S Ct 2890;
77 L Ed 2d 490 (1983).

Of principal interest in this appeal is the preëmption provision of the ERISA in which Congress declared:

> [T]he provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b). [88 Stat 897.]

The issue we address is the scope of this provision. The remedies available to the plaintiff under Michigan contract law[6] appear to "relate to" her defined benefit pension plan. On the other hand, in the United States Supreme Court's rulings on the ERISA preëmption provision, it is presumed that Congress did not intend to preëmpt areas of traditional state regulation. See, e.g., *Metropolitan Life Ins Co v Massachusetts,* 471 US 724, 740; 105 S Ct 2380; 85 L Ed 2d 728 (1985). Thus, we must determine more precisely what related areas of state law are preëmpted by the ERISA and whether the plaintiff's claims fall within one or more of those areas.

### B. THE FEDERAL DECISIONS

In *Alessi v Raybestos-Manhattan, Inc,* 451 US 504; 101 S Ct 1895; 68 L Ed 2d 402 (1981), the United States Supreme Court first considered the scope of the ERISA's preëmption provision. The state law at issue was a section of New Jersey's workers' compensation act prohibiting a setoff of workers' compensation benefits against employee retirement pension benefits. *Id.,* pp 507-508. The New Jersey set-off provision precluded a reduction in workers' compensation payments, not pension

---

[6] For the purposes of ERISA's preëmption provision, the word "law" is defined so as to include case law. 29 USC 1144(c)(1).

payments. Nevertheless, the Supreme Court held
that the New Jersey provision was preëmpted
because it ultimately affected the administration
of pension funds by indirectly interfering with the
integration method for calculating benefits.[7] *Id.,* p
524. Unfortunately for our purposes, the *Alessi*
Court declined an invitation to determine the
outer boundaries of ERISA preëmption. *Id.,* pp 524-
525.

ERISA preëmption was next considered by the
United States Supreme Court in the context of
New York statutes forbidding discrimination in
employment, including discrimination in employee
benefit plans on the basis of pregnancy. *Shaw v
Delta Air Lines, Inc, supra,* p 88. The *Shaw* Court
unanimously held that New York law was
preëmpted by the ERISA. The Court reasoned that
the words "relate to" were used by Congress in a
broad sense, including laws which directly regu-
lated employee benefit plans as well as those af-
fecting employee benefit plans by implication. *Id.,*
pp 96-99. Since the obvious implication of the New
York statutes was to require disbursements under
employee benefit plans for otherwise noncompens-
able, pregnancy-related disability, the state law
did fall within the general ERISA preëmption provi-
sion.[8] The *Shaw* Court was careful to note, how-
ever, that

---

[7] Presumably, the New Jersey statute actually would have in-
creased the resources available to the pension fund for integration
and thus was not a financial burden on pension funds. However, the
New Jersey law did impose a significant administrative burden be-
cause it required a distinct method for the calculation of benefits
under the plan for New Jersey workers.

[8] *Shaw* involved two New York statutes, the Human Rights Law,
NY Exec Law, §§ 290-301 (McKinney), and the Disability Benefits
Law, NY Work Comp Law, §§ 200-242 (McKinney). In addition to
holding that these statutes fell within the general ERISA preëmption
provision by virtue of their *relation to* employee benefit plans, the
*Shaw* Court also considered the statutes under the ERISA preëmption

[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. Cf. *American Telephone and Telegraph Co v Merry,* 592 F2d 118, 121 (CA 2, 1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not preëmpted). [*Shaw, supra,* p 100, n 21.]

Two years later, in *Metropolitan Life, supra,* a Massachusetts statute, requiring certain minimum mental health care benefits in general health insurance policies, was upheld in a challenge under the ERISA preëmption provision.[9] Again, the United States Supreme Court had no difficulty in finding that the statute fell within the general preëmption provision of the ERISA, 29 USC 1144(a), in that the state law did "relate to" employee benefit plans. However, the Court also found an exception for insurance regulation to be applicable. See 29 USC 1144(b)(2)(A).[10] The *Metropolitan Life* Court acknowledged that certain "disuniformities" from state to state would result from its ruling, but concluded that these inevitably flowed from the decision of Congress to preserve local insurance regulation. *Id.,* p 747.

In *Pilot Life Ins Co v Dedeaux,* 481 US 41; 107 S Ct 1549; 95 L Ed 2d 39 (1987), a complaint was filed for tortious breach of contract, breach of

exceptions, 29 USC 1144, which are not at issue in this appeal. *Shaw* ultimately held that the New York Human Rights Law is preëmpted by the ERISA insofar as it renders the activities of a plan unlawful which are not unlawful under Title VII of the Civil Rights Act, 42 USC 2000e *et seq. Shaw* also held that the New York Disability Benefits Law is preëmpted insofar as it regulates benefits under a multibenefit plan, but exempt from ERISA preëmption insofar as it regulates separately administered disability benefit plans.

[9] The Massachusetts statute was also upheld under a National Labor Relations Act preëmption challenge.

[10] The plaintiff in this appeal does not assert that any statutory exception to ERISA preëmption is applicable.

fiduciary duties, and fraud in the inducement on the basis of Pilot Life's termination of Dedeaux's long-term disability benefits under a group plan. Pilot Life was both the insurer and administrator of the plan. *Id.,* pp 43-44. All of Dedeaux's claims were based upon an allegedly improper processing of its claims under the plan. Dedeaux's complaint stated causes of action only under state law. None of the causes of action available under the ERISA was asserted by Dedeaux against Pilot Life. See 29 USC 1132. The unanimous *Pilot Life* Court held that Dedeaux's complaint did "relate to" an employee benefit plan and did not fall within any ERISA preëmption exception. The Court concluded that the ERISA's civil enforcement provisions were Dedeaux's exclusive remedy against the plan and its fiduciaries. *Id.,* p 57.

In the companion case of *Metropolitan Life Ins Co v Taylor,* 481 US 58; 107 S Ct 1542; 95 L Ed 2d 55 (1987), the United States Supreme Court considered the more specific, procedural question of removal jurisdiction under the ERISA in cases alleging improper administration of employee benefit plans. Taylor had filed common-law claims for breach of contract and "mental anguish" against Metropolitan Life as the administrator of his group disability plan. Taylor joined those claims with additional claims against his employer, General Motors, for wrongful termination and failure to promote on the basis of the alleged disability. The claims against both defendants were originally filed in state court. Metropolitan Life and General Motors petitioned for removal to federal court, alleging federal question jurisdiction over the disability benefits claims and *pendent* jurisdiction over the remaining claims. The United States Supreme Court upheld the removal, ruling that the ERISA preëmpted Taylor's common-law claims

and also displaced them with the ERISA's own civil enforcement provisions. See 29 USC 1132. It is important to note, however, that the *Taylor* Court was not required to address the question of ERISA preëmption of the claims against the employer, since removal jurisdiction was not based upon those claims.[11] See *Taylor v General Motors Corp,* 826 F2d 452 (CA 6, 1987) (addressing the pendent claims on remand).

Most recently, in the watershed opinion of *Fort Halifax Packing Co, Inc v Coyne,* 482 US 1; 107 S Ct 2211; 96 L Ed 2d 1 (1987), the United States Supreme Court rejected an ERISA preëmption challenge to a Maine statute requiring a one-time severance payment to employees in the event of a plant closing. *Fort Halifax* is particularly significant for two reasons. First, it is the first United States Supreme Court opinion in which a statute survived an express ERISA preëmption challenge without reference to a specific ERISA preëmption exception and therefore represents the first United States Supreme Court opinion defining the outer boundaries of the general ERISA preëmption provision. Second, *Fort Halifax* contains the most detailed and explicit United States Supreme Court discussion of the purposes underlying the ERISA preëmption provision.

The *Fort Halifax* Court emphasized that an ERISA preëmption analysis must be guided by respect for the separate spheres of governmental authority preserved in our federal system. *Fort*

---

[11] We acknowledge that, in *Morningstar v Meijer, Inc,* 662 F Supp 555 (ED Mich, 1987), the *Taylor* holding was viewed as a ruling that the retaliatory discharge claim against the employer was preëmpted by the ERISA and supplanted by the ERISA's civil-enforcement provisions. See 29 USC 1132, 1140. While we decline to embrace this view, we do note that it is consistent with our holding. The plaintiff herein, like Morningstar, has not alleged a retaliatory discharge and would therefore not be subject to ERISA preëmption.

*Halifax, supra,* 482 US 19. Citing *Alessi, supra,* the Court explained the federal interest as follows:

ERISA's preëmption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coördinating complex administrative activities. A patch-work scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Preëmption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations. See, e.g., HR Rep No. 93-533, p 12 (1973) ("[A] fiduciary standard embodied in Federal legislation is considered desirable because it will bring a measure of uniformity in an area where decisions under the same set of facts may differ from state to state"). [*Fort Halifax, supra,* 482 US 11.]

On the other hand, the Court also noted a state interest in the serious economic consequences of plant closings. *Id.,* 482 US 19, n 13.

The *Fort Halifax* Court found that federal and state interests were properly reconciled in the Maine statute, explaining:

Fort Halifax found no need to respond to passage of the Maine statute by setting up an administrative scheme to meet its contingent statutory obligation, any more than it would find it necessary to set up an ongoing scheme to deal with the obligations it might face in the event that some day it might go bankrupt. The company makes no contention that its statutory duty has in any way hindered its ability to operate its retirement plan in uniform fashion, a plan that pays retirement, death, and permanent and total disability benefits on an ongoing basis. . . . The obligation imposed by the Maine statute thus differs radically in

impact from a requirement that an employer pay
ongoing benefits on a continuous basis.

The Maine statute therefore creates no impedi-
ment to an employer's adoption of a uniform
benefit administrative scheme. Neither the possi-
bility of a one-time payment in the future, nor the
act of making such a payment, in any way creates
the potential for the type of conflicting regulation
of benefit plans that ERISA preëmption was in-
tended to prevent. As a result, preëmption of the
Maine law would not serve the purpose for which
ERISA's preëmption provision was enacted. [*Fort
Halifax, supra,* 482 US 14-15.]

From the foregoing authority we conclude that a
preëmptive relationship to an ERISA plan is estab-
lished when state law interferes with a plan by: 1)
altering the level of benefits which would be paid
out under a given plan from state to state, 2)
altering the terms of a plan, such as the require-
ments for eligibility, or 3) subjecting the fiduciaries
of a plan to claims other than those provided for
in the ERISA itself. Thus, in *Alessi,* the New Jersey
set-off preclusion for workers' compensation bene-
fits was preëmpted by the ERISA because it altered
the level of benefits which would be paid to a
beneficiary under a plan in New Jersey. The New
York law in *Shaw* was preëmpted because it had
the effect of altering the terms of a disability plan
to include coverage for pregnancies. Finally, in
*Pilot Life* and *Metropolitan Life Ins Co,* the com-
mon-law claims were preëmpted because they sub-
jected the fiduciaries of the plans to liability apart
from that expressly created by the ERISA.

Our conclusion that the boundaries of the ERI-
SA's express preëmption are demarcated by these
relations is consistent with both the purpose and
method of Congress in creating the ERISA. The
purpose, as noted in the United States Senate

Finance Committee's report, was to encourage the development of employee benefit plans. However, the method chosen by Congress was not a direct requirement that employers provide certain benefits, *Shaw, supra,* p 91, but the creation of a uniform national body of law regulating such plans. *Id.,* p 99, quoting 120 Cong Rec 29197, 29933. With these purposes and methods in mind, we turn to the question whether · the ERISA preëmpted this plaintiff's claim for future pension benefits as damages in her wrongful discharge claim.

C. THE RELATIONSHIP BETWEEN LOST FUTURE PENSION BENEFITS IN A WRONGFUL DISCHARGE CLAIM AND THE ERISA

Defendants Park West Galleries and Albert Scaglione initially argue that the award of future pension benefits in the plaintiff's wrongful discharge claim does "relate to" the Park West pension plan because the damages represent future pension benefits which would have accrued to the plaintiff under the plan. In fact, according to the defendants, the amended judgment entered in this case specifically identifies this portion of the plaintiff's award as "for the pension."

The defendants' argument would be compelling if the award of future pension benefits had been against Park West Galleries, Inc., Defined Benefit Pension Plan. There is, however, no danger of such an award in this case. The plan itself is not and never has been a party to this action. Furthermore, no trustee or administrator of the plan has been joined in a capacity as administrator or trustee. In short, the simple fact that the damage award was based in part on the terms of the plan does not place any fiscal or administrative burden

upon the plan itself. This relationship to the plan is, in the words of the *Shaw* Court, too "peripheral" to trigger ERISA preëmption. *Shaw, supra,* p 100, n 21.[12]

The defendants also argue that the award of future pension benefits relates to the pension plan because the plan itself provides a remedy for the loss of future benefits in circumstances of this kind. Article VI, § 5 of the plan does provide for vested credits when an employee's employment is terminated "for any reason."[13] The defendants additionally assert that the ERISA regulations, specifically 29 CFR 2530.200a-2530.200b-3, are incorporated in the Park West plan by law and would provide for the accrual of future pension credits in addition to vested credits upon the basis of a successful claim for lost wages.[14]

---

[12] As the concurring opinion of Chief Justice RILEY notes, the sole basis for the plaintiff's claim of wrongful discharge is a traditional area of Michigan common law. The rights and duties of these litigants have their genesis in a contract of employment. The fact that *damages* were calculated with reference to the plan does not change the nature of this cause of action. See *Lingle v Norge Div of Magic Chef, Inc,* 486 US 399; 108 S Ct 1877; 100 L Ed 2d 410 (1988) (the fact that additional, substantive rights are provided to an employee who is the victim of a retaliatory discharge for claiming workers' compensation benefits does not inextricably link the cause of action to similar rights under the employee's collective bargaining agreement, nor does it invoke federal preëmption under § 301 of the Labor Management Relations Act, 29 USC 185). But see also *Metropolitan Life Ins Co v Massachusetts,* 471 US 724, 747; 105 S Ct 2380; 85 L Ed 2d 728 (1985) (unlike ERISA, the NLRA contains no statutory preëmption provision), and see n 15.

[13] Again we must note that the claim for pension benefits was for future benefits, *excluding* those for which the plaintiff was already vested under the plan. The parties have agreed that the present value of those vested benefits which were excluded from damages was approximately $5,000.

[14] It is alleged by the defendants and amicus curiae Michigan Manufacturers Association that these ERISA regulations would allow the plaintiff to obtain additional accruals under the plan upon the basis of the jury's award of front and back pay. See n 4. Actually, additional accruals are allowed by regulation only for back pay. 29 CFR 2530.200b-2(a)(3). In addition, no more than 501 hours of service are required to be credited by regulation, 29 CFR 2530.200b-2(a)(2)(i),

Assuming, arguendo, that the defendants' interpretations of the plan and relevant ERISA regulations are correct, we are nevertheless forced to conclude that the ERISA preëmption provision is inapplicable. The question of express ERISA preëmption does not turn upon whether an alternative remedy is offered under the plan or under the ERISA.[15] Indeed, the *Shaw* Court implicitly ac-

---

although a particular plan may require that additional hours of back pay "service" be credited. 29 CFR 2530.200a-2. We are apprised of no provision in the Park West Galleries defined pension plan which requires accruals in excess of 501 hours of back pay. The record does not disclose whether the jury considered these regulations in awarding pension benefits, although the record also fails to disclose any attempt by the defendants to have the jury instructed in this regard.

[15] As we have noted above, the ERISA does contain its own civil enforcement mechanism. 29 USC 1132. While it may be asserted that creation of this mechanism carries with it an *implied* preëmption, the question is largely rendered academic by the fact that actions under § 1132 generally "relate to" plans in that they impose a fiscal, administrative, or legal burden upon plans. One possible exception to this rule would be retaliatory discharges which are proscribed under 29 USC 1140 and made actionable under 29 USC 1132a(3)(B)(ii), although in our view, even this cause of action carries a high probability of imposing fiscal, administrative, or legal burdens upon a plan. We need not address this issue, since the plaintiff has not pled a cause of action under 29 USC 1132, nor have the defendants argued or briefed the issue of implied preëmption. However, we observe no inconsistency between the remedies provided in 29 CFR 2530 and Michigan law in this case. See n 11. Thus, to the extent that the defendants' argument suggests implied preëmption, state law must be treated far more deferentially. As one commentator has explained:

[W]here Congress legislates "in a field which the States have traditionally occupied . . . we start with the assumption that the historic police powers of the States [are] not to be [ousted] by the Federal Act unless that was the clear and manifest purpose of Congress." Because this test looks to the nature of the subject regulated rather than the character of the federal regulatory scheme, the standards upon which it relies closely parallel those that would be applied if the state regulation or taxation were challenged under the commerce clause. If, under the *Cooley* doctrine, [*Cooley v Bd of Wardens of the Port of Philadelphia*, 53 US (12 How) 299; 13 L Ed 996 (1851)], the activity or interest affected by a challenged state action is regarded as "local," and if the state action contravenes no other commerce clause requirement, then total federal preëmption will not be inferred in the absence of an obvious congres-

knowledged that, apart from the New York stat-
utes, no law would preclude plan administrators
from discriminating against pregnancy-related dis-
ability prior to the effective date of the Pregnancy
Discrimination Act, 42 USC 2000e(k). *Id.,* p 89.
ERISA preëmption instead, as discussed above,
turns upon whether state law places any fiscal,
administrative, or legal burdens upon the plan. In
our view, the fact that the plaintiff may have had
additional remedies available under the plan does
not indicate that pursuit of her remedy against
her employer creates a fiscal, administrative, or

> sional intent to bar state action over the same subject matter.
> On this basis, the Court ruled in *Huron Portland Cement Co v
> City of Detroit,* [362 US 440; 80 S Ct 813; 4 L Ed 2d 852 (1960)],
> that a municipality may enforce its smoke abatement ordi-
> nance against a federally licensed steamship engaged in inter-
> state commerce, even though structural modification of the
> vessel was required to bring it into compliance with the anti-
> pollution statute. Similarly, while federal occupation of the
> field defined by direct regulation of safety designs for nuclear
> power plants had been made clear in *Pacific Gas & Electric Co
> [v State Energy Resources Conservation & Development Comm,*
> 461 US 190; 103 S Ct 1713; 75 L Ed 2d 52 (1983)], the Court in
> *Silkwood v Kerr-McGee Corp,* [464 US 238; 104 S Ct 615; 78 L
> Ed 2d 443 (1984)], held that state law providing for compensa-
> tory and punitive damages for tort victims, including victims of
> radiation injuries, was *outside* the occupied field and therefore
> not preëmpted. In reaching this conclusion, the Court was
> clearly influenced by the long tradition of state concern with
> the compensation of victims of negligently, recklessly, or inten-
> tionally inflicted injury.
>
> On the other hand, if the field is one that is traditionally
> deemed "national," the Court is more vigilant in striking down
> state incursions into subjects that Congress may have reserved
> to itself. It was not surprising, therefore, that the Court invali-
> dated the state alien registration law in *Hines v Davidowitz,*
> [312 US 52; 61 S Ct 399; 85 L Ed 581 (1941)]; the Court was
> extremely solicitous of the paramount federal interest in mat-
> ters germane to foreign affairs. [Tribe, American Constitutional
> Law (2d ed), pp 499-500. Emphasis in the original.]

In our view, the field of individual employment contracts is one
which states have traditionally occupied. Since we find no clear and
manifest purpose within § 1132 to oust states from this field, we
would be reluctant to find a § 1132 remedy exclusive under a theory
of implied preëmption.

legal burden upon the plan itself.[16] Viewed in this light, the defendants' second argument is merely a more sophisticated version of the earlier argument that the accrual of future pension benefits relates to the plan because the award was calculated on the basis of the terms of the plan.[17] Again, we can only conclude that this relationship is too peripheral to trigger ERISA preëmption. *Shaw, supra.*

Finally, we reject the Court of Appeals reasoning that sound policy requires ERISA preëmption of these damages because:

> The prospect of jury awards under state law for lost pension benefits is a severe disincentive to the establishment of private pension plans and inconsistent with ERISA's express preëmption of all state laws that "relate to" plans under its coverage. [153 Mich App 520, 527; 396 NW2d 210 (1986).][18]

In our view, it is an equally plausible microeconomic hypothesis that employers "buy" labor at market rates and therefore would be required to substitute other, recoverable forms of compensation in the event that they elect to discontinue pension contributions. Moreover, even assuming that the economic analysis of the Court of Appeals is correct, we would find the relationship too remote to trigger ERISA preëmption. *Shaw, supra,* p

---

[16] Although the imposition of an administrative burden might suggest preëmption, not every state law which imposes an administrative burden upon an ERISA plan is preëmpted. See *Mackey v Lanier Collections Agency & Service, Inc,* 486 US —; 108 S Ct 2182; 100 L Ed 2d 836 (1988) (state law allowing the garnishment of employee ERISA welfare plan benefits not preëmpted).

[17] To the extent that the argument also implies a duplication of recovery, we hasten to add that this was a question of proofs which might have been submitted in the trial court. In fact, it appears from the record that the future pension benefits awarded to the plaintiff were reduced by her vested amount under the plan.

[18] We are aware that the Court of Appeals analysis in this case was rendered without the benefit of *Fort Halifax.*

100, n 21. Our reading of the ERISA preëmption provision indicates that there must be a real, if only indirect, relationship between the challenged state law and an employee benefit plan. The relationship posited in the Court of Appeals analysis is merely hypothetical. It might similarly be posited, for example, that an increase in Michigan's minimum wage[19] would discourage the creation of pension funds by simultaneously reducing the amount of an employer's income allocable to pensions and increasing the level of benefits specified under a pension plan,[20] yet we would be loath to rule that state minimum wage law is preëmpted by the ERISA. Such a relationship is, in the language of the *Shaw* Court, simply too "remote" to trigger ERISA preëmption. *Shaw, supra.*[21]

We agree with the conclusion of the dissent that this wrongful discharge claim has some relationship to the Park West Defined Benefit Pension Plan. However, as made clear by the decisions of the United States Supreme Court, proper analysis of the scope of the ERISA preëmption provision requires more than an inquiry as to whether state law is logically related to an ERISA plan. We reject an all-encompassing view of this legislation which would subordinate the sovereign powers of this state to the limited authority of the federal government. As the United States Supreme Court has explained:

---

[19] See MCL 408.381 *et seq.;* MSA 17.255(1) *et seq.*

[20] In art VI, § 1 of the Park West Galleries, Inc., defined benefit pension plan, for example, the amount of the benefit is directly proportional to wages paid during the years of service.

[21] In *Gilbert v Burlington Industries, Inc,* 765 F2d 320, 327 (CA 2, 1985), aff'd sub nom *Roberts v Burlington Industries, Inc,* 477 US 901; 106 S Ct 3267; 91 L Ed 2d 558 (1986), it was explained that when a state statute of general application does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic effect does not require that the statute be invalidated.

ERISA preëmption analysis "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system." *Alessi v Raybestos-Manhattan, Inc,* 451 US [504] 522 [68 L Ed 2d 402; 101 S Ct 1895 (1981)]. [*Fort Halifax Packing Co, supra,* 482 US 19.]

In sum, our review of the defendants' arguments and the record in this case fails to show that the award of future benefits imposes an administrative, fiscal, or legal burden upon the employee benefit plan. We therefore conclude that the award of future pension benefits is not preëmpted under the ERISA. Finding no merit in the remaining issue raised by the defendants, we decline to discuss it in this appeal.[22]

### III

#### CONCLUSION

Recent federal law establishes that state law is preëmpted under the ERISA, 29 USC 1144(a) when the state law "relates to" an employee benefit plan by: 1) altering the level of benefits which would be paid out under a given plan from state to state, 2) altering the terms of the plan such as requirements for eligibility, or 3) subjecting the fiduciaries of a plan to claims other than those provided in the ERISA itself. Furthermore, even state law which relates to an employee benefit plan by imposing a fiscal, administrative, or legal burden upon the employee benefit plan may not be preëmpted by the ERISA if the relationship is so remote as to constitute merely a hypothetical possibility. Since the award of future pension benefits in this wrongful discharge claim was against the

[22] The defendants have argued alternatively that a loss of future pension benefits was too remote or speculative to recover as damages for a breach of employment contract.

employer, rather than the pension plan or an administrator or a fiduciary of the plan, it does not relate to a pension plan within the meaning of the ERISA. The decision of the Court of Appeals is reversed and the judgment of the circuit court is reinstated.

Brickley, Cavanagh, and Archer, JJ., concurred with Boyle, J.

Riley, C.J. (*concurring*). I agree with the result in the majority opinion that § 514 of the Employee Retirement Income Security Act, 29 USC 1144, does not expressly preëmpt a jury award of future pension benefits in a *Toussaint* action.[1] However, I write separately to highlight certain facts which provide additional support for applying the "remote relationship" exception in this case and, alternatively, to offer what I believe to be a more workable approach to ERISA preëmption than that adopted in the majority opinion.

I

In support of its holding, the majority has apparently relied on the "tenuous, remote [and] peripheral" relationship exception derived from *Shaw v Delta Air Lines, Inc,* 463 US 85, 100, n 21; 103 S Ct 2890; 77 L Ed 2d 490 (1983). The plaintiff's damage award, in the words of the Court in the majority opinion, does not sufficiently relate to the Park West pension plan because the award, though based in part upon the terms of the plan, places no "fiscal, administrative, or legal burden upon the plan itself." *Ante,* pp 218-219. See *ante,* pp 215-216, 221. The majority properly derives

---

[1] *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980).

its reasoning from the United States Supreme Court decision in *Fort Halifax Packing Co, Inc v Coyne,* 482 US 1; 107 S Ct 2211; 96 L Ed 2d 1 (1987), wherein a Maine severance pay statute was upheld against an ERISA preëmption challenge.

However, in my view, if the majority chooses to apply the "remote relationship" exception in this case, it should emphasize some additional facts. The Court has apparently relied solely on the fact that the plaintiff has not made a claim of liability under the ERISA or against the plan itself (nor against any administrator or fiduciary of the plan). I agree with the Court that this is an important consideration. However, in my opinion, this fact, standing alone, is insufficient to justify the application of the "remote relationship" exception in this case. I would also stress the nature of the plaintiff's suit to support a holding that the damage award in this case is related too peripherally to the ERISA plan to warrant preëmption.

The sole basis for the plaintiff's claim of wrongful discharge is Michigan common law. An action for breach of an employment contract, such as the plaintiff's, has traditionally been an area of state regulation, one that Congress presumably did not intend to preëmpt. *Metropolitan Life Ins Co v Massachusetts,* 471 US 724, 740; 105 S Ct 2380; 85 L Ed 2d 728 (1985). See also *Mackey v Lanier Collections Agency & Service, Inc,* 486 US —; 108 S Ct 2182; 100 L Ed 2d 836 (1988) (Congress did not intend to preëmpt the application of state garnishment procedures to ERISA welfare benefit plans); *American Telephone & Telegraph Co v Merry,* 592 F2d 118, 121 (CA 2, 1979) (Congress did not intend the ERISA to alter traditional support obligations, and, therefore, the state garnishment of a spouse's pension income to enforce alimony and support orders is not preëmpted). The rights and duties of

the parties herein have their genesis in a contract of employment founded entirely upon state law, rather than upon the ERISA or an ERISA plan. The Park West plan was introduced at the trial in this case merely to serve as a measure of damages suffered as a result of the employer's breach under *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). Furthermore, the plan itself has remained entirely unaffected throughout this suit because state law requires the breaching employer to pay such damages out of its own assets, rather than out of the plan. In my view, these facts provide further support for applying the "remote relationship" exception in this case.

II

Although I find the foregoing analysis persuasive, I believe a more practicable approach to ERISA preëmption can be elicited from the plain language of § 1144. Congress has specifically provided that "this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ." 29 USC 1144(a) (emphasis added). Although this provision is extremely broad, it is not all-encompassing. *Lane v Goren,* 743 F2d 1337, 1339 (CA 9, 1984). For instance, 29 USC 1144(b)(2)(A) precludes preëmption of any state law "which regulates insurance, banking, or securities." Similarly, § 1144(b)(4) provides that the preëmption provision "shall not apply to any generally applicable criminal law of a State." Congress has further explained the scope of ERISA preëmption in the definitional section, 29 USC 1144(c)(2), wherein the term "state" for preëmption purposes is characterized as "a State, any political subdivisions thereof,

or any agency or instrumentality of either, *which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.*" (Emphasis added.)

A fundamental principle of statutory construction is that where a statute supplies its own glossary, a court must apply the terms as expressly defined. *Erlandson v Genesee Co Employees' Retirement Comm*, 337 Mich 195, 204; 59 NW2d 389 (1953); *McRaild v Shepard Lincoln Mercury, Inc*, 141 Mich App 406, 410; 367 NW2d 404 (1985). See, generally, 73 Am Jur 2d, Statutes, §§ 223-226, pp 412-413. Thus, interpreting the language of § 1144 using the definitions Congress itself has supplied, a state law is preëmpted if it "relate[s] to" an ERISA plan and "purports to regulate" its terms and conditions. This approach to ERISA preëmption has been adopted by the Second and Ninth Circuits.[2] *Lane, supra; Martori Bros Distributors v James-*

---

[2] The Sixth Circuit Court of Appeals has indicated its disapproval of this approach, although it expressly declined to decide whether § 1144(c)(2) limits the ERISA preëmption provision. See *Authier v Ginsberg*, 757 F2d 796, 799, n 4 (CA 6, 1985), cert den 474 US 888 (1985).

The Sixth Circuit reasoned that reliance on § 1144(c)(2) "purports to regulate" language to limit ERISA preëmption "would be contrary to the legislative history of ERISA. Congress rejected explicitly a proposed preëmption provision which reached only specific subjects covered by ERISA in favor of the current broad language of Section 1144(a)." *Id.;* see also *Shaw, supra* at 98-99, ns 18-20 (explaining § 1144(a)'s evolution from narrow conflict of content approach to its broad present form).

I agree with the Sixth Circuit that Congress purposefully drafted § 1144(a) in its current broad language. It is indisputable that Congress intended to preëmpt state laws relating to benefit *plans,* rather than laws relating to specific matters covered by the ERISA, i.e., reporting, disclosure, funding, vesting, fiduciary responsibility, etc. *Shaw, supra* at 98.

In my opinion, however, applying § 1144(c)(2) to § 1144(a) does not contravene Congress' intent in this regard. Support for this position can be found in the express language of § 1144(c)(2), which comports with that of § 1144(a) (the ERISA supersedes state laws that "relate to any *employee benefit plan[s]*"). Section 1144(c)(2) similarly addresses only "State" action which "purports to regulate . . . the terms and conditions of *employee benefit plans* . . . ." (Emphasis added.) The

*Massengale,* 781 F2d 1349 (CA 9, 1986), cert den
479 US 1018; 107 S Ct 435; 93 L Ed 2d 385 (1986);
*Rebaldo v Cuomo,* 749 F2d 133 (CA 2, 1984), cert
den 472 US 1008 (1985). See also *Sommers Drug
Stores v Corrigan Enterprises, Inc,* 793 F2d 1456
(CA 5, 1986), cert den 479 US 1034; 107 S Ct 884;
93 L Ed 2d 837 (1987).

The United States Supreme Court has pro-
nounced that a state law "relates to" an employee
benefit plan if it "has a connection with or refer-
ence to such a plan." *Shaw, supra* at 97. Given
this expansive definition, it would appear that the
damage award herein relates to the Park West
plan since the jury referred to the plan when it
calculated the amount of the plaintiff's lost pen-
sion benefits. Nonetheless, even assuming the
award satisfies the Supreme Court's interpretation
of a state law which "relates to" an ERISA plan, in
order to trigger preëmption under § 1144, the state
action must also "purport to regulate" a term or
condition of the plan.

The defendants and amicus curiae, Michigan
Manufacturers Association, have maintained
throughout this appeal that the amount of the
jury award conflicts with the amount the plaintiff
would have received under Article VI, § 5 of the
Park West plan and incorporated ERISA provisions,
29 CFR 2530.200a-2530.200b-3. Thus, it is arguable
that the jury award indirectly regulates the terms
of the plan.

definition in § 1144(c)(2) does not mention the purported regulation of
the specific subjects of the ERISA. Thus, it is possible to apply
§ 1144(c)(2) to § 1144(a) without undermining congressional intent. In
fact, as mentioned previously, a basic rule of construction mandates
the application of statutorily defined terms. *Erlandson* and *McRaild,
supra.*

In conclusion, therefore, § 1144(c)(2) should be applied to § 1144(a).
Such an application is not only consistent with the express language
and legislative history of the ERISA preëmption provision, but also
mandated by the rules of statutory construction.

After examining these provisions, I have concluded that they simply do not apply in the instant case. Article VI, § 5 of the Park West plan provides for *vested,* not *future,* pension credits in the event an employee is terminated. Similarly, the cited CFR provisions, which are promulgated pursuant to 29 USC 1054(b)(3)(A) involve the determination of an "employee's *accrued* benefit." There is simply no language in the ERISA regulations or in the plan itself concerning the determination of future benefits under an employment contract. Thus, it would be improper to blindly apply them to the plaintiff's *Toussaint* claim without regard to the scope of the provisions themselves.

In conclusion, therefore, I would apply § 1144(c)(2) to the ERISA preëmption provision, § 1144(a), and hold that the plaintiff's jury award is not preëmpted since it in no way "purports to regulate" any term or condition of the Park West pension plan.

For the foregoing reasons, I concur in the result of the majority opinion.

LEVIN, J., concurred with RILEY, C.J.

GRIFFIN, J. I respectfully dissent. Plaintiff's claim for future pension benefits as part of her action for wrongful discharge under *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), is precluded by the preëmption provision, § 514, of the Employee Retirement Income Security Act, 29 USC 1144(a), particularly in light of the fact that a remedy relating to such benefits was available under the

terms of the Park West pension plan and the regulations promulgated under the ERISA.[1]

Section 514(a) of the ERISA preëmpts "any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan . . . ." 29 USC 1144(a) (emphasis supplied). The ERISA preëmption provision has been characterized as the "most sweeping [federal] preëmption statute ever enacted [by Congress]." *Authier v Ginsberg,* 757 F2d 796, 801, n 8 (CA 6, 1985).

When it enacted the ERISA, Congress took into account a number of policy considerations. In addition to the goal of providing protection for employees, Congress considered it important that costs to employers be controlled so as to encourage the improvement of existing plans and the creation of new plans for the benefit of workers. For example, the following excerpts from the legislative history are revealing:

> [T]he committee is aware that under our voluntary pension system, *the cost of financing pension plans is an important factor in determining whether any particular retirement plan will be adopted and in determining the benefit levels if a plan is adopted, and that unduly large increases in costs could impede the growth and improvement of the private retirement system.* [93rd Cong (2d Sess), 1974 US Code Cong & Admin News 4682. See also pp 4670, 4890, and 4904. Emphasis added.]

> [T]hese new requirements [in the ERISA] have been carefully designed to provide adequate protection for employees and, at the same time, provide *a favorable setting for the growth and development of private pension plans.* It is axiomatic to anyone who has worked for any time in this area that *pension plans cannot be expected to develop if costs are made overly burdensome, particularly for*

---

[1] Article II, § 10 of the Park West plan. 29 CFR 2530.200b-2(b)(c).

*employers who generally foot most of the bill.* This
would be self-defeating and would be unfavorable
rather than helpful to the employees for whose
benefit this legislation is designed. [Statement by
the Hon. Al Ullman, Ranking Majority Member of
the House Committee on Ways and Means. *Id.,* p
5167. Emphasis supplied.]

As the Court of Appeals panel recognized in this
case, "[t]he possibility of jury awards for 'lost
pension benefits' that far exceed a plaintiff's enti-
tlement under the pension plan itself would not
create 'a favorable setting for the growth and
development of private pension plans.' " 153 Mich
App 520, 526-527; 396 NW2d 210 (1986).

In pursuit of its goals, Congress determined that
it would be important and necessary to preëmpt
all state laws, including judge-made law, which
"may now or hereafter relate" to any employee
benefit plan:

[W]ith the narrow exceptions specified in the
bill, the substantive and enforcement provisions of
the conference substitute are intended to preëmpt
the field for Federal regulations, *thus eliminating
the threat of conflicting or inconsistent State and
local regulation of employee benefit plans. This
principle is intended to apply in its broadest sense
to all actions of State or local governments, or any
instrumentality thereof, which have the force or
effect of law.* [120 Cong Rec 29933 (August 22,
1974) (Sen. Williams). Emphasis supplied.]

The problems which Congress sought to avoid by
enacting the preëmption provision were also de-
scribed by the United States Court of Appeals for
the Fourth Circuit:

Any hope of uniformity in employer obligations
would be lost were we to allow various states'

common law governing these obligations to coexist with federal common law under ERISA. Under such a scheme, employers would not only be faced with dual requirements within a single state, but with different state requirements wherever they do business. ERISA surely contemplates a different result. [*Holland v Burlington,* 772 F2d 1140, 1147, n 5 (CA 4, 1985), aff'd sub nom *Brooks v Burlington,* 477 US 901; 106 S Ct 3267; 91 L Ed 2d 559 (1986).]

The United States Supreme Court has repeatedly recognized the pervasive breadth of the ERISA's preëmption provision. See *Pilot Life Ins Co v Dedeaux,* 481 US 41; 107 S Ct 1549; 95 L Ed 2d 39 (1987); *Metropolitan Life Ins Co v Massachusetts,* 471 US 724, 739-740; 105 S Ct 2380; 85 L Ed 2d 728 (1985). Furthermore, it has not been overlooked that Congress rejected the opportunity to adopt a narrower preëmption provision which would have preëmpted only those state laws which deal *directly* with ERISA plans. *Shaw v Delta Air Lines, Inc,* 463 US 85, 98-100; 103 S Ct 2890; 77 L Ed 2d 490 (1983).

As stated by the Court in *Pilot Life Ins Co, supra,* p 54,

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.

Further,

> Congress used the words "relate to" in § 514(a) in their broad sense. To interpret § 514(a) to preëmpt only state laws specifically designed to affect employee benefit plans would be to ignore

the remainder of § 514. It would have been unnecessary to exempt generally applicable state criminal statutes from preëmption in § 514(b), for example, if § 514(a) applied only to state laws dealing specifically with ERISA plans. [*Shaw v Delta Air Lines, Inc,* 463 US 98.]

As the United States Supreme Court recognized in *Shaw,* 463 US 96-97,

A [state] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a *connection with or reference to such a plan.* [Emphasis supplied.]

In the instant case, plaintiff's claim for future pension benefits as part of her wrongful discharge suit clearly had "a connection with or reference to" the defendant's ERISA pension plan because the claim was necessarily based on the existence and terms of the plan. Where the plaintiff, as in this case, introduces into evidence a pension plan covered by the ERISA in order to prove damages, the plaintiff's claim necessarily and obviously "relate[s] to" the plan. Insofar as under *Toussaint* Michigan law might otherwise allow an award in excess of entitlement under the plan, it is and should be preëmpted.

Article VI, § 5 of the Park West plan sets forth a defined benefit for any employee whose employment is terminated "for any reason" other than death prior to the normal retirement date. Those provisions are supplemented by ERISA regulations which are incorporated into the plan by reference. Art II, § 10.

Under the Park West plan, which incorporates ERISA regulations, an employee who is wrongfully terminated would be entitled to the addition of pension credits on the basis of an award of back

pay. The plan does not contemplate the type of large jury award for future pension benefits which was awarded in this case. Contrary to positions taken in the majority and concurring opinions, I believe that by allowing such an award, different than that provided under the pension plan, Michigan's law, as set forth in *Toussaint, supra,* and applied in this case, "purports to regulate," at least indirectly, the "terms and conditions" of the Park West plan. 29 USC 1144(c)(2).

As the concurring opinion points out, "[t]here is simply no language in . . . the plan itself concerning the determination of future benefits" (*ante,* p 227) such as were awarded by the jury in plaintiff's *Toussaint* action.[2] Yet, the majority would allow the jury to utilize the plan in calculating an award of future benefits which is at odds with the terms of the plan. This amounts to state regulation of an ERISA plan. In *Fort Halifax Packing Co, Inc v Coyne,* 482 US 1, 13, n 8; 107 S Ct 2211; 96 L Ed 2d 1 (1987), the Court held that "state laws requiring the payment of benefits also 'relate to a[n] employee benefit plan' if they attempt to dictate what benefits shall be paid under a plan."

The majority analysis leans heavily on the fact that this action was brought against the employer rather than the plan itself. To set aside ERISA preëmption on that basis not only elevates form over substance, but it ignores a line of cases which have already held that preëmption applies even though the suit is directed at the employer instead of its plan. See *Sorosky v Burroughs Corp,* 826 F2d 794 (CA 9, 1987); *Ellenburg v Brockway, Inc,*

---

[2] To the extent that the concurring opinion intimates that the jury award was based on future pension benefits not contemplated by the Park West plan, such award was not for foreseeable damages, contrary to basic contract law. See, generally, 22 Am Jur 2d, Damages, § 42, pp 65-66.

763 F2d 1091 (CA 9, 1985); *Gilbert v Burlington Industries, Inc,* 765 F2d 320 (CA 2, 1985), aff'd 477 US 901; 106 S Ct 3267; 91 L Ed 2d 558 (1986); *Blau v Del Monte Corp,* 748 F2d 1348 (CA 9, 1985), cert den 474 US 865 (1985); *Kelly v IBM Total & Permanent Disability Income Plan,* 573 F Supp 366 (ED Pa, 1983), aff'd without opinion 746 F2d 1467 (CA 3, 1984); *Witkowski v St Anne's Hosp of Chicago,* 113 Ill App 3d 745; 69 Ill Dec 581; 447 NE2d 1016 (1983).

Because I conclude that the award of future pension benefits under the recently developed *Toussaint* law in Michigan is preëmpted by the ERISA in this case, I would affirm the decision of the Court of Appeals.