**Louis COONTZ, Plaintiff–Appellant,**

v.

**GORDON JEWELRY CORPORATION, d/b/a Jacards Jewelry and Jeff Berman, Defendants–Appellees.**

**No. 87–1808.**

Court of Appeals of Iowa.

February 23, 1989.

Lyle A. Rodenburg, Council Bluffs, for plaintiff-appellant.

John J. Gazzoli, Jr., of Lewis & Rice, St. Louis, Mo., and Philip Willson of Smith, Peterson, Beckman & Willson, Council Bluffs, for defendants-appellees.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ., but decided en banc.

HAYDEN, Presiding Judge.

Plaintiff Louis Coontz appeals the decision of the district court which granted defendants' motion for summary judgment on his claims of wrongful discharge and intentional infliction of emotional distress. The district court found the federal court had jurisdiction over plaintiff's claims because his state claim was preempted by the Employee Retirement Income Security Act (ERISA). The court also found there was no outrageous conduct to support a claim for intentional infliction of emotional distress. Plaintiff claims the district court erred in granting the motion for summary judgment on both of his claims. We reverse.

Plaintiff Louis Coontz was employed by the Gordon Jewelry Company as an assistant manager. Jeff Berman was his supervisor. Plaintiff's employment contract provided that he was to be discharged for

reasonable cause only. Coontz was discharged on August 30, 1985, for failure to comply with a company rule regarding discounts for cash payments by employees. The company claims Coontz was fired because the store was cutting back on employees. Coontz was sixty-two years old and had worked for the company for six and one-half years. After he was fired he was afraid to tell his wife and friends. He would cry and was unable to sleep. Coontz filed an application for unemployment benefits and was allowed to collect benefits.

Plaintiff filed a petition in district court claiming wrongful discharge and intentional infliction of emotional distress. Plaintiff also filed a suit in federal court alleging age discrimination under the Age Discrimination in Employment Act (ADEA) and under ERISA. The federal court stayed discovery in that case until the state court case was resolved. Defendants filed a motion for summary judgment. The district court dismissed the claim for intentional infliction of emotional distress because the defendants' actions did not constitute outrageous conduct. The court also dismissed the claim for wrongful discharge, despite a prima facie showing of wrongdoing by the defendants, because the State tort claim was preempted by ERISA. Coontz now appeals from the action of the district court sustaining the motion for summary judgment.

## I.

Coontz contends his lawsuit does not fall within the exclusive jurisdiction of the federal courts. He also argues his cause of action is not related to a benefit plan and therefore, is not preempted by ERISA. We agree.

Congress has set forth the purpose of ERISA:

It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).

■ In enacting ERISA, Congress "saw the need to set minimum, uniform, national standards for employee benefit plans and to provide for uniform remedies in the enforcement of the plans." *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215 (8th Cir.1981) (*cert. denied* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981)). In doing so, Congress preempted all state laws which relate to employee benefit plans, not only state laws which directly attempt to regulate an area expressly covered by ERISA. *Id.* However, courts have held ERISA does not preempt the entire state law of employment relationships. *E.g. Contreras v. Blue Cross of California*, 199 Cal.App.3d 945, 950, 245 Cal.Rptr. 258, 261 (Cal.App.2 Dist.1988).

■ Under ERISA's "virtually unique preemption provision," *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24, n. 26, 103 S.Ct. 2841, 2854, n. 26, 77 L.Ed.2d 420, 440, n. 26 (1983), with limited exceptions, ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employer benefit plan described in [section 4(a) of ERISA] and not exempt under [section 4(b) of ERISA]." *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 799 (9th Cir.1987), ERISA § 514(a), 29 U.S.C. 1144(a). Congress intended the words "relate to" be interpreted broadly. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39, 47 (1987). State law causes of action are said to relate to an employee benefit plan if they have "a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983).

In determining whether ERISA preemption exists here, we must decide whether the cause of action asserted in Coontz's lawsuit "relate to" Gordon Jewelry's em-

ployee benefit plan. *See* § 514(a), as set forth in 29 U.S.C. § 1144(a).

■ Coontz pleaded two causes of action in this case, only Division I of his petition alleging wrongful discharge is relevant in this portion of the opinion. Through discovery it became clear Coontz relied on a number of theories to support his wrongful discharge claim. In determining ERISA preempted the present action, the trial court relied on an exchange during a deposition where Coontz indicated a belief he could have been fired to prevent him from receiving pension benefits. However, a review of the record indicates Coontz also alleges breach of contract or wrongful discharge on theories that have no relationship to the benefit plan—for example discharge without good cause. Thus, we determine to the extent this claim refers to the employee benefit plan it is preempted, however, the claim is not preempted on theories independent of the benefit plan. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir.1987); *Barnick v. Long's Drug Stores, Inc.*, 203 Cal.App.3d 377, 250 Cal. Rptr. 10 (Cal.App. 4 Dist.1988).

The district court also would conclude ERISA preempts Coontz's claims not directly related to the benefit plan, reasoning damages for the additional claims may include "loss of retirement benefits, vacation pay, health insurance, sick leave benefits, as well as lost wages." We determine this interpretation is too broad and elect to follow the rationale of a recent Michigan Supreme Court decision.

In *Teper v. Park West Galleries, Inc.*, 431 Mich. 202, 427 N.W.2d 535 (1988), the Michigan court held a jury award of future pension benefits was not preempted by ERISA, stating:

> The defendants' argument would be compelling if the award of future pension benefits had been against Park West Galleries, Inc., Defined Benefit Pension Plan. There is, however, no danger of such an award in this case. The plan itself is not and never has been a party to this action. Furthermore, no trustee or administrator of the plan has been joined in a capacity as administrator or trustee. In short, the simple fact that the damage award was based in part on the terms of the plan does not place any fiscal or administrative burden upon the plan itself. This relationship to the plan is, in the words of the *Shaw* Court, too "peripheral" to trigger ERISA preemption. *Shaw, supra*, at p. 100, n. 21, 103 S.Ct. at p. 2901, n. 21.

*Teper*, 431 Mich. at 215, 216, 427 N.W.2d at 541.

■ We follow the Michigan Court's rationale and determine the simple possibility damages may include future pension benefits is not enough to trigger ERISA preemption of a state law cause of action.

## II.

Coontz also argues the court erred in dismissing his claim for intentional infliction of emotional distress.

Our law has held summary judgment is proper when there is no genuine issue of fact and the moving party is entitled to a judgment as a matter of law. Iowa R.Civ. P. 237(c). "If under the entire record, the only conflict concerns the legal consequences flowing from undisputed facts, entry of summary judgment is proper." *Brown v. Monticello State Bank of Monticello*, 360 N.W.2d 81, 84 (Iowa 1984). Our chore on review is to determine whether a genuine issue of fact exists and whether the law was applied correctly. *Id.*

■ To sustain a judgment for intentional infliction of emotional distress, Coontz needs to show Gordon's conduct was outrageous; that Gordon acted intentionally or recklessly; and Coontz suffered severe and extreme emotional distress as a result of Gordon's actions. *Tomash v. John Deere Indus. Equipment Co.*, 399 N.W.2d 387, 392 (Iowa 1987). If Coontz fails to meet any of these propositions, he is not entitled to damages. *Id.*

■ The district court found no outrageous conduct on the part of Gordon had been shown. It did not go on to determine whether Coontz met his burden on the remaining issues.

The facts here, viewed in the light most favorable to Coontz, indicate Gordons discharged Coontz without good cause, while Gordon's agents fabricated reasons for his dismissal, causing Coontz to suffer from anxiety and mental distress for which he was under a doctor's care. We also note at the time of the summary judgment hearing, no deposition had yet been taken of Coontz's doctor.

From the facts revealed here, we refuse to hold as a matter of law Gordon's conduct was not sufficiently "atrocious and utterly intolerable in a civilized community." *Id.* Therefore, not meeting the definition of "outrageous conduct" articulated by the supreme court in *Tomash.*

We determine Gordons was not entitled to a summary judgment as a matter of law and reverse the district court on this issue.

### III.

Gordons raise additional issues on appeal, however we determine they are not properly before us here because Gordons did not file a notice of cross-appeal as mandated by Iowa Rule of Appellate Procedure 5.

**REVERSED AND REMANDED FOR NEW TRIAL.**

All Judges concur except SACKETT and DONIELSON, JJ., who concur in part and dissent in part.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part.

I concur with Division I. of the majority decision. I agree the plaintiff should have the right to pursue his claim for wrongful discharge in the State's court.

I cannot, however, agree with the majority's decision there is evidence of conduct of the defendant so outrageous and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *See Tomash v. John Deere Indus. Equip. Co.,* 399 N.W.2d 387, 392–93 (Iowa 1987); *M.H. By and Through Callahan v. State,* 385 N.W.2d 533, 539 (Iowa 1986); *Reihmann v. Foerstner,* 375 N.W.2d 677, 681 (Iowa 1985); *Northrup v. Farmland Industries,* 372 N.W.2d 193, 198 (Iowa 1985).

The majority has found as plaintiff argues that there is evidence defendant's agents fabricated the reason for plaintiff's discharge. The alleged evidence of a fabricated reason comes from testimony of Mr. Berman, defendant's employee, at plaintiff's unemployment hearing. That testimony as set forth by plaintiff in the appendix is as follows:

LYLE RODENBURG: Well, form 46 is the official reason for discharge?

BERMAN: Yes.

LR: But you're here today, testifying under oath, contrary to form 46, the official discharge policy; haven't you?

BERMAN: No. that was written up—I know what that says. I was told by my legal department to write it up that way. But, I also informed them that it was done—and the fact that the company policy was broken twice.

LR: Who told you to write it up that way, sir, and why did you have occasion to consult with a legal consultant that day in regard to Mr. Coontz?

BERMAN: Okay. Right now, I called up Marlena Earl in our legal department.

LR: Marlena?

BERMAN: Marlena Earl.

LR: She a lawyer?

BERMAN: She's in our legal department. I assume she's a lawyer.

LR: And she told you to do what?

BERMAN: To write the resume—or the wording to his discharge the way I wrote it up.

LR: And that, then, from your legal department was the legal reason for his discharge was reallocation of work force? On form 46, Exhibit No. 4 here—

BERMAN: Yes, that's written there, sir.

LR: But here, today, you are maintaining an entirely different policy to this Hearing Officer under oath; aren't you, sir?

BERMAN: No, because it's—again, the major reason why I released Mr. Coontz was because of the discount policy.

\* \* \* \* \* \*

LR: I forgot the last question. But isn't it true that you were asked to discharge Mr. Coontz for non-performing?

BERMAN: Yes.

LR: By Mr. Ward?

BERMAN: Yes.

The only thing the testimony shows is there may have been several reasons for the discharge and defendant sought and seeks to rely on those reasons most favorable to its position. That is not outrageous conduct.

DONIELSON, J., joins this dissent.